TENDERED FOR FILING

P. 1

SEP 21 2018

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

Jason Jarrell Spikes                    Civil Action

V.                                      No. 18 7817

Matthew Caplain    Pleadings    Section " "  Mag " "

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art 1, §2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. La. Code Crim P. art 821. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocense." La. R.S 15:483; State v. Wright, 98-0601 (La. App. 1 Cir. 2/19/99), 748 So.2d 1157& 20000895(La. 11/17/00), 773 So. 2d 732. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocense presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothes that raises a reasonable doubt. State v. Captville, 448. So. 2d 676, 680

P. 2

(La. 1984); State v. Taylor, 97-2261 (La. App. 1 Cir. 9/25/98),
721 So.2d 929, 932.

According to the defendant, inmates routinely move their belongings
to different areas of the cell block, and he did not have any belongings
in the area where the homemade knife was found.

Washington Parish Sheriff's Officer Joshua Mc Morris testified that
the defendant was found "staggering" toward the bunk bed where the
homemade knife was found. According to Officer Mc Morris, he knew that
the homemade knife belonged to the defendant because (1) it was found
in the bunk where the defendant was passed out, (2) the bunk was
listed as belonging to the defendant in the prison's record, and (3)
a piece of mail addressed to the defendant was in the bunk.

The trier of fact is free to accept or reject, in whole or in part,
the testimony of any witness. Moreover, where there is conflicting
testimony about factual matters, the resolution of which depends
upon a determination of the credibility of the witness, the matter
is one of the weight of the evidence, not its sufficiency. State v.
Richardson, 459 So.2d 31, 38 (La. App. 1 Cir 1984). The trier
of fact's determination of guilt, Taylor, 721 So.2d at 932. Absent
a showing that the defendant was not granted the fundamental due
process of law, it is not appropriate for this court to impinge
on the fact finder's discretion and reject that credibility determination.
See State v. Johnson, 2003-1228 (La. 4/14/04), 870 So.2d
995, 1000.

On cross-examination, defense counsel asked: "is there anything other than your word that you could show me that it was Jason Spikes' bunk." Sgt. Mc Morris answered: "No sir, nothing other than my word." (See Trail p.304).

## Law and Argument

Here, there is overwhelming evidence to suggest that the shank discovered under the mattress in Cell Block B belonged to someone other than Spikes. The officers testified that none of the inmates were assigned to any particular areas in this particular cell block. (See Trial Record p.311) These inmates would routinely move their belongings to the different areas of the cell block because they would randomly move to different bunk beds on different nights. Spikes did not have any belongings in the area where the shank was discovered. (See Trail Record p.382)

Therefore, it is highly probable that the contraband (i.e. the shank) belonged to some one else other than Spikes. This cell block had various video cameras installed to monitor this area on a twenty-four basis. (See Trail Records p.307). Not one of the tapes from either of those video cameras was shown to the jury. In fact, none of the correctional officers even attempted to view the tape before charging Spikes with this offense. (See Trail Record p.270)

Logically, none of the inmates who were on the cell block would be expected to appear in court and testified as to the identity of

P.4

the actual owner of the home made knife. Hence, the States' entire case hinged on the testimony of correctional officers, one of whom was believed to be responsible for smuggling illegal drugs and other forms of contraband into the prison. (See Trial Record p. 346) Moreover the correctional officers who have been caught smuggling these items into the prison were never prosecuted - the only penalty they suffered has been termination from the Department of Corrections.

## Exclusion of Evidence Illegally Obtained

The First Circuit of Appeals accepted my a Habitual-Offender because Matthew Caplan say I didn't file a Reconsider Motion. And I did check out the document.

Exparte/Consent Motion for Leave to File Exhibits a/to claims against Matthew Caplan filed by Jason Jerrell Spikes. Motion(s) referred to Karen Wells Roby. (sc) (Entered: 03/20/2018) Civil Docket for Case #2:17-cv-7817

Matthew Caplan lied on his brief. He say the defendant does not contest proof of the second or third elements. His argument focuses exclusively on the first element; possession. He argues: "The shank discovered under the mattress in Cell Block B belonged to someone other than Spikes". Appellant's Brief, pg. 8

The elements of the offense are therefore: (1) the possession (2) on the premises of a parish prison or jail (3) of any instruments customarily used as a dangerous weapon. On the First Circuit of Appeals (page 5) I denied being assigned to a bunk and denied knowledge of the knife. After Josh McMorris finding the shank, he explained:

p. 5

I left the dorm. I first went to where they had Mr. Spilkes secured, which was in a visitation booth. I let him know what I found. "I found your knife." At that time, Mr. Spilkes stated to me, "That's okay. I'll just make another one.

"fruit of the poisonous tree" doctrine - states that once the primary evidence (the "tree") is shown to have been unlawfully obtained, any secondary or derative evidence (the "fruit") derived from it is also inadmissible.

The Brady Rule on Disclosure of Evidence to the Accused
La. Code Crim P. art 821. In conducting this review, we must be expressly mindful of Louisiana's circumstantial evidence test, i.e., assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.

Tittle 42 of U.S. Code Section 1983 - Civil Action for Deprivation of Civil Rights
Tittle 42 of U.S. Code Section 1985 - Conspiracy to Interfere with Civil Rights
Tittle 42 of U.S Code Section 1981 - Equal Rights under the Law.
Tittle 18 of U.S. Code Section 242 - Criminal Liability for Deprivation of Civil Rights
Tittle 18 of U.S. Code Section 241 - Criminal Liability for Conspiracy to Deprive a Person of Rights
Tittle 18 of U.S. Code Section 245 - Violations of Federally Protected Activites
Administrative Investigators and Sactions

P. 6

Regular Penal Code Provisions Punishing Criminal Acts
If an officer lies under oath, criminal liability for perjury ensues.

Infliction or mental or emotional distress: A form of intentional tort consisting of the infliction of severe emotional distress on a person through intentional or reckless extreme and outrageous conduct.

Ethnic violation - Of or relating to sizable groups of people sharing a common and distinctive racial, national, religious, linguistic, or cultural heritage.

Fed. R. Civ. P. 56(c) - requires that when a proper motion of summary judgment is made, the non-moving party must set forth specific facts

Summary judgment is proper "if the pleadings, depositions, answers to interrogations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a matter of law.

Jason Spikes
YOUR SIGNATURE IN INK

Certificate of Service
I hereby certify that I have served
a copy of this document on all counsel
to record either in person or by mailing it
postage prepaid on this
16   day of August _____, 2018
Jason Spikes

P.1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

Jason Spikes

—vs—

Matthew Caplain

Civil Action
No. 17817
Section " "Mag" "

Pleading

Fed. R. Civ. P. 56 (c) - requires that when a proper motion of summary judgement is made, the non-moving party must setforth specific facts.

Summary judgement is proper "if the pleadings, depositions, answers to interogations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entittled to a matter of law.

Jason Spikes

Certificate of Service

I hereby certify that I have served a copy of this document on all counsel fo record either in person or by mailing it postage prepaid on this _____ day of August, 2018

Jason Spikes
Signature

TENDERED FOR FILING

SEP 21 2018

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk



Office Of The Clerk
## Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

Rodd Naquin
Clerk of Court

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

### Notice of Judgment and Disposition

December 21, 2017

Docket Number:  2017 - KA - 0655

State of Louisiana
    versus
Jason Spikes

TO:   Matthew  Caplan
      701 N. Columbia Street
      Covington, LA 70433
      mcaplan@22da.com

Frederick Kroenke  Esq.
Louisiana Appellate Project
707 Rapides Street
Baton Rouge, LA 70806

Warren LeDoux Montgomery
701 N. Columbia Street
Covington, LA 70433
wmontgomery@22da.com

Prentice Lang White  Esq.
P.O. Box 74385
Baton Rouge, LA 70874
plwhitelawfirm@bellsouth.net

Hon. William  J. Knight
701 N. Columbia Street
Covington, LA 70433

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

RODD NAQUIN
CLERK OF COURT

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in **Jackson v. Virginia,** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. La. Code Crim. P. art. 821. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; **State v. Wright,** 98-0601 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 2000-0895 (La. 11/17/00), 773 So.2d 732. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Captville,** 448 So.2d 676, 680 (La. 1984); **State v. Taylor,** 97-2261 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.

Pursuant to Louisiana Revised Statutes 14:402(A), "No person shall introduce contraband into or upon the grounds of any state correctional institution." "Contraband" means "[a] dangerous weapon, or other instrumentality customarily used or intended for probable use as a dangerous weapon or to aid in an escape[.]" La. R.S. 14:402(D)(2). The defendant does not dispute that a homemade knife was found, but rather, contends that it was not in his possession. According to the defendant, inmates routinely move their belongings to different areas of the cell block, and he did not

4

have any belongings in the area where the homemade knife was found.

Washington Parish Sheriff's Officer Joshua McMorris testified that the defendant was found "staggering" toward the bunk bed where the homemade knife was found. According to Officer McMorris, he knew that the homemade knife belonged to the defendant because (1) it was found in the bunk where the defendant was passed out, (2) the bunk was listed as belonging to the defendant in the prison's record, and (3) a piece of mail addressed to the defendant was in the bunk.

The defendant testified that on the date the knife was found, he was sleeping on the floor on a mattress. He stated that he was on the bunk where the knife was found because he could not see the television from the mattress where he sleeps. He denied being assigned to a bunk and denied knowledge of the knife. The defendant also denied having any mail on or underneath the bunk.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Richardson,** 459 So.2d 31, 38 (La. App. 1st Cir. 1984). The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. **Taylor,** 721 So.2d at 932. Absent a showing that the defendant was not granted the fundamental due process of law, it is not appropriate for this court to impinge on the fact finder's discretion and reject that credibility determination. See **State v. Johnson,** 2003-1228 (La. 4/14/04), 870 So.2d 995, 1000.

Based on our review of the record, we find that the district court did not err or abuse its discretion in imposing the defendant's sentence in accordance with the mandatory minimum penalty provided for in Louisiana Revised Statutes 15:529.1(A)(4)(a).   The defendant failed to present any arguments that clearly and convincingly showed that he is exceptional and a victim of the legislature's failure to assign a sentence that was meaningfully tailored to his culpability, to the gravity of the offense, and to the circumstances of the case.   Thus, the district court had no reason to deviate downward from the mandatory minimum term of twenty years.   We also note that a remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown.   See **State v. Harper**, 2007-0299 (La. App. 1 Cir. 9/5/07), 970 So.2d 592, 602, writ denied, 2007-1921 (La. 2/15/08), 976 So.2d 173.   Accordingly, this assignment of error is without merit.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**

## CERTIFICATE OF SERVICE

I hereby certify that I have forwarded a copy of the foregoing brief to the

appellant(s), through counsel listed below, as follows:

Party:              Appellant, Jason Spikes
                    Prentice L.White, Esq.
                    Louisiana Appellate Project
                    P.O. Box 74385
                    Baton Rouge, LA 70874

Method of Service:  email, plwhitelawfirm@bellsouth.net

Date of Service:    _____September 14, 2017_____


                         _____*Matthew Caplan*_____
                         Matthew Caplan, LSBA #31650
                         Assistant District Attorney

## STATEMENT OF THE FACTS

The defendant's trial  involved two separate incidents occurring at the Washington Parish Jail: one incident occurred on February 27, 2016; the other occurred on March 3, 2016. Because the conviction is for the incident occurring on February 27, this statement of the facts focuses on the events of that date.

The pertinent testimony comes from Sgt. Josh McMorris, Warden Jim Miller, and the defendant himself.

### I.

Sgt. McMorris testified that on February 27, 2016, "[i]t was reported to me that one of the officers observed one of the inmates staggering around." R. at 290. He then went to the "control center" and watched a "live view" of Cell Block B. Id. at 290-292. He saw inmate Jason Spikes "stagger[] through the day room to his bunk." Id. at 293). Sgt. McMorris went to Cell Block B to check on Spikes's well-being, then conducted a "shakedown":

> Q:   What did you observe about him, either when you went in there or through the video, when he got on his bunk?
>
> A:   First thing, there was no physical trauma. So we tried to figure out what was wrong with him. At that time, he appeared to be under the influence of something.
>
> Q:   Did you observe that from the video, or once you got in there?
>
> A:   Once we got into the dorm, sir.
>
> Q:   When you got in the dorm, was he still on the bunk?
>
> A:   Yes, sir.
>
> Q:   What did you-all do?
>
> A:   A couple of us helped him up and cuffed him and escorted him up front by the control center.
>
> Q:   What did you do?
>
> A:   I started the shakedown of his bunk.
>
> Q:   Is that his personal bunk?
>
> A:   Yes, sir.
>
> Q:   How do you know that?

> A:    We have a bed book in the jail, that we keep up with where inmates stay. Also, when we do searches, we verify that is where that person is at by mail. We print them out ID cards also. Normally, we search for one of those items.
>
> Q:    Did you confirm any of that, that that was Mr. Spikes bed?
>
> A:    Yes, sir.
>
> Q:    What's the first thing you did when you started to search his area?
>
> A:    Naturally, I pulled the blanket and sheet off, placed it on the floor. Went to flip the mat back, and when I flipped the mat back is when I found the handmade shank.

R. at 294-295. See also R. at 311-312 (Sgt. McMorris located mail addressed to Jason Spikes during the shakedown).

Sgt. McMorris described the "shank" as a piece of broken glass "out of the microwave, the turntable plate" which had a hardened toilet paper handle on one end and was sharp enough on the other end to be used for stabbing. R. at 295-297.

After finding the shank, he explained:

> I left the dorm. I first went to where they had Mr. Spikes secured, which was in a visitation booth. I let him know what I found, "I found your knife." At that time, Mr. Spikes stated to me, "That's okay. I'll just make another one."

R. at 297.

On cross-examination, defense counsel asked: "is there anything other than your word that you could show me that it was Jason Spikes' bunk?" Sgt. McMorris answered: "No sir, nothing other than my word." R. at 304.

## II.

Jim Miller, the warden of the parish jail, testified that he authorized the shakedown of the defendant's cell block, and that he later received the shank from Sgt. McMorris, filled out a chain-of-custody form, and submitted it to an evidence officer for safekeeping. R. at 254-257; id. at 260.

## LAW AND ARGUMENT

1.   **The defendant's first assignment of error (sufficiency of the evidence; R.S. 14:402) is without merit.**

The defendant claims that the trial court erred when "it accepted the jury's verdict." *Appellant's Brief*, pg. 6.[1] He argues the conviction is based upon insufficient evidence because "the State failed to adequately establish that the contraband was among Spikes' belongings and not that of the other 33 inmates that were housed in the same section of the prison." *Id.*, pp. 9, 11-13.

### A.   Preservation of error for review; standard of review.

The question whether the evidence is sufficient is preserved for review because the defendant moved for post-judgment verdict of acquittal which the trial court denied. See R. at 34-35 (motion); R. at 9 (minute entry reflecting ruling).

The standard of review for sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). See generally State v. Mussall, 523 So.2d 1305, 1308-1311 (La. 1988).

### B.   Overview of the applicable law.

The statute of conviction provides: "It shall be unlawful to possess . . . upon the premises of any . . . parish prison or jail . . . any instrumentality customarily used as a dangerous weapon." R.S. 14:402(E)(6).

The elements of the offense are therefore: (1) the possession (2) on the premises of a parish prison or jail (3) of any instrumentality customarily used as a dangerous weapon.

---

[1]   As a technical matter, the defendant did not contemporaneously object to the the trial court's receipt and recordation of the verdict. See La. C.Cr. P. art. 811 & R. at 455-457. However, the ruling actually being appealed is the denial of the motion for post-verdict judgment of acquittal.

The defendant does not contest proof of the second or third elements. His argument focuses exclusively on the first element, possession. He argues: "the shank discovered under the mattress in Cell Block B belonged to someone other than Spikes." *Appellant's Brief*, pg. 8.

The law of "possession" primarily arises in cases involving drugs:

> A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs.

State v. Toups, 01-1875 (La. 10/15/02), 833 So.2d 910, 913.

This Court has imported these factors into the analysis of the sufficiency of the evidence in contraband in jail cases. State v. Converse, 529 So.2d 459, 464-465 (La. App. 1 Cir. 1988).

### C.   The jury's decision to convict was rational.

Viewing the evidence in the light most favorable to the prosecution, the jury accepted the testimony of Sgt. McMorris and rejected the testimony of the defendant. The testimony of Sgt. McMorris, accepted as true, establishes:

- The defendant was laying atop the bunk assigned to him before the shakedown began.

- A homemade knife was found in that bunk, as was mail addressed to the defendant.

- The defendant, when confronted, did not deny possessing the shank. Instead he said, "That's okay. I'll just make another one."

That is, the defendant was in close physical proximity to the contraband (he was on the bunk before the search was conducted), had access to the contraband (it was assigned to him), had knowledge of the contraband (because, when confronted, he said "I'll just make another one").

9

any other specific ground for reconsideration of the sentence by oral or written

motion at the trial court level precludes our review of his claim of sentence

excessiveness").

Likewise, the fact that the defendant filed a motion to reconsider the *original*

sentence isn't enough: a new motion to reconsider sentence must be made

following the imposition of the new sentence. State v. Smith, 03-1153 (La. App. 1

Cir. 4/07/04), 879 So.2d 179.

This assignment of error is not preserved for review.

### B.    If preserved for review, this assignment of error is without merit.

The defendant was sentenced as a habitual offender to a mandatory twenty-

year sentence under La. R.S. 15:529.1.

This sentence is presumed to be constitutional:

> To rebut the presumption that the mandatory minimum sentence
> is constitutional, the defendant must clearly and convincingly
> show that he is exceptional, which means that because of
> unusual circumstances this defendant is a victim of the
> legislature's failure to assign sentences that are meaningfully
> tailored to the culpability of the offender, the gravity of the
> offense, and the circumstances of the case. Given the legislature's
> constitutional authority to enact statutes such as the Habitual
> Offender Law, it is not the role of the sentencing court to
> question the wisdom of the legislature in requiring enhanced
> punishments for multiple offenders. Instead, the sentencing court
> is only allowed to determine whether the particular defendant
> before it has proven that the mandatory minimum sentence is so
> excessive in his case that it violates the constitution. Departures
> downward from the minimum sentence under the Habitual
> Offender Law should occur only in rare situations.

State v. Scott, 05-0325 (La. App. 1 Cir. 11/04/05), 927 So.2d 441, 446-447.

The defendant argues that he is exceptional because "each of the predicate

conviction were non-violent and not sex-related." *Appellant's Brief*, pg. 11. This is as

a matter of law insufficient to warrant a downward departure: "A trial judge may not

rely solely upon the non-violent nature of the instant crime or of past crimes as

## CONCLUSION

The defendant/appellant, Jason Jarrell Spikes, requests that this Honorable Court vacate and set aside his conviction for possession or introduction of contraband in a state correctional institution (to wit: the shank), as well as his adjudication and sentence for being a fourth-felony offender. Spikes asserts that his conviction is invalid because the State failed to present sufficient evidence that the shank found on one of the bunk beds in Cell Block B belonged to him as opposed to the other 33 inmates in the area.

Secondly, the State used insufficient to establish that Spikes was a fourth-felony offender. The fingerprints on the bills of information did not match and the probation officer that was called to testify against him had little to no familiarity to Spikes personally or to the information in his case. Finally, Spikes complains that his sentence, which stemmed from the faulty evidence submitted at the multiple bill hearing, was excessive despite the fact that it was within the statutory guidelines. Further, neither of his predicate convictions would qualify as a crime of violence or a sex offense. Thus, it was manifestly erroneous for the district court to impose a 20-year sentence against him in this matter.

RESPECTFULLY SUBMITTED
LOUISIANA APPELLATE PROJECT

PRENTICE L. WHITE (La. Bar Roll No: 24250)
P.O. BOX 74385
BATON ROUGE, LOUISIANA 70874-4385
TELEPHONE: (225) 235-2928
Email: plwhitelawfirm@bellsouth.net

ATTORNEY FOR APPELLANT,
Jason Spikes.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing appellate brief

could not say definitively that he was either acquainted with Spikes' case or the circumstances as to why he was on probation. Thus, the district court erred in adjudicating Spikes as a fourth felony offender. Likewise, the twenty-year sentence imposed by the district court was excessive considering that the State had not satisfied its burden of proof in the multiple bill hearing.

## LAW AND ARGUMENT

### a. Possession of Contraband (Shank)

A conviction based on insufficient evidence cannot stand as it violates due process.[24] The constitutional standard for testing the sufficiency of the evidence–as adopted by the Louisiana Legislature in enacting LSA-C. Cr. P. Art. 821–requires that a conviction be based upon proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[25] The *Jackson* standard is an objective standard of review for testing the overall evidence, both direct and circumstantial, for reasonable doubt. The circumstantial evidence must convince the trier of fact that the evidence excludes every reasonable hypothesis of innocence.[26]

Here, there is overwhelming evidence to suggest that the shank discovered under the mattress in Cell Block B belonged to someone other than Spikes. The officers testified that none of the inmates were assigned[27] to any particular areas in this particular cell block. These inmates would routinely move their belongings to the different areas of the cell block because they would randomly move to different

---

[24]See USCA-Const. Amend. XIV § 1; LSA-Const. Art. I,§ 2.

[25]See *Jackson v. Virginia*, 443 U. S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

[26]See *State v. Graham*, 2002-1492 (La. App. 1 Cir. 2/14/03), 845 So. 2d 416, 420.

[27]See Trial Record p. 311.

bunk beds on different nights.  The correctional officers would then record the inmates new areas in pencil due to the sporadic and unpredictable nature of the inmates in this area.[28]  Spikes did not have any belongings in the area where the shank was discovered.[29]

Therefore, it is highly probable that the contraband (i.e. the shank) belonged to someone else other than Spikes.  This cell block had various video cameras installed to monitor this area on a twenty-four basis.[30]  Not one of the tapes from either of those video cameras was shown to the jury.  In fact, none of the correctional officers even attempted to view the tape before charging Spikes with this offense.[31]

Logically, none of the inmates who were on the cell block would be expected to appear in court and testified as to the identity of the actual owner of the homemade knife.  Hence, the State's entire case hinged on the testimony of correctional officers, one of whom was believed to be responsible for smuggling illegal drugs and other forms of contraband into the prison.[32]  Moreover, the correctional officers who have been caught smuggling these items into the prison were never prosecuted–the only penalty they suffered has been termination from the Department of Corrections.

Accordingly, Spikes requests that this Court vacate and set aside his conviction for possession or introduction of contraband in a state correctional institution based on the lack of insufficient evidence to prove that Spikes was the person in possession (actual or constructive) of the shank found in between the mattress[33] and the bed

---

[28]See Trial Record p. 275.

[29]See Trial Record p. 382.

[30]See Trial Record p. 307.

[31]See Trial Record p. 270.

[32]See Trial Record p. 346.

[33]See Trial Record p. 412.

p. 1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

Jason Spikes

-vs-

Lewis Murry

Pleadings

Civil Action
No. 17817
Section " " "Mag" "

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. 1 § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. La. Code Crim. P. art 821. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15: 438. State v. Wright, 98-0601 (La. App. 1 Cir. 2/19/99), 730 So. 2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So. 2d 1157 & 2000-0895 (La. 11/17/00), 773 So. 2d 732. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis fails, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Captiv-

p. 2

448 So2d 676, 680 (La. 1984); State v. Taylor, 97-2261 (La, App.
1 Cir. 9/25/98), 721 So2d 929, 932.

According to the defendant, inmates routinely move their belongings
to different areas of the cell block, and he did not have any belongings
in the area where the homemade knife was found.

Washington Parish Sheriff's Officer Joshua McMorris testified
that the defendant was found "staggering" toward the bunk bed where
the homemade knife was found. According to Officer McMorris, he knew
that the homemade knife belonged to the defendant because (1) it
was found in the bunk where the defendant was passed out, (2) the bunk
was listed as belonging to the defendant in the prison's record, and (3)
a piece of mail addressed to the defendant was in the bunk.

The defendant testified that on the date the knife was found, he was
sleeping on the floor on a mattress. He stated that he was on the bunk
where the knife was found because he could not see the television from the
mattress where he sleeps. He denied being assigned to a bunk and denied
knowledge of the knife. The defendant also denied having any mail
on or underneath the bunk.

The trier of fact is free to accept or reject, in whole or in part, the
testimony of any witness. Moreover, where there is conflicting testimony
about factual matters, the resolution of which depends upon a
determination of the credibility of the witnesses, the matter is
one of the weight of the evidence, not its sufficiency. State v.

P.3

Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). The trier of facts determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. Taylor, 121 So.2d at 932. Absent a showing that the defendant was not granted the fundamental due process of law, it is not appropriate for this court to impinge on the fact finder's discretion and reject that credibility determination. See State v. Johnson, 2003-1228 (La. 4/14/04), 870.2d.

On cross-examination, defense counsel asked: "Is there anything other than your word that you could show me that it was Jason Spikes' bunk? Sgt. McManus answered: "No sir, nothing other than my word. See Trail p. 304

## Law And Argument

Here, there is overwhelming evidence to suggest that the shank discovered under the mattress in Cell Block B belonged to someone other than Spikes. The officers testified that none of the inmates would routinely move their belongings to the different areas of the cell block because they would randomly move to different nights. Spikes did not have any belongings in the area where the shank was discovered. (See Trail Record p. 307)

Therefore, it is highly probable that the contraband (i.e. the shank) belonged to someone else other than Spikes. This cell block had various video cameras installed to monitor this area on a twenty-four basis. (See Trail Record p. 307). Not one of the tapes from either of

p. 84

those video cameras was shown to the jury. In fact, none of the correctional officers even attempted to view the tape before charging Spikes with this offense. (See Trail Record p. 270)

Logically, none of the inmates who were on the cell block would be expected to appear in court and testified as to the identify of the actual owner of the homemade knife. Hence, the State's entire case hinged on the testimony of correctional officers, one of whom was believed to be responsible for smuggling illegal drugs and other forms of contraband into the prison. (See Trail Record p. 346) Moreover, the correctional officers who have been caught smuggling these items into the prison were never prosecuted - the only penalty they suffered has been termination from the Department of Corrections.

Const. Art 3 Right to Individual Dignity
I went to two trails with Lewis Murry, and he keep calling me James Spikes, that's my father that received a life sentence on a non-violent charge. I keep an telling him in trail my name is Jason Spikes not James Spikes.

Const. Article IV - Congress may be general Laws prescribe the Manner in which Acts, Records, and Judicial Proceedings shall be proud and the Effect.
The district attorney's office pratice R.S. 14:134 Malfeasance in Office companded with R.S 14:130 Obstruction of Justice by using there powers as district-attorneys, and withholding testimony and my records from the forensic-specialist that the prints

P.5

wasn't mine.
Lewis Murry offered me ten-years with the bill. Charges 14:402 was 0 to 5. He could have offered me two five year sentences with the bill

## Exclusion of Evidence Illegally Obtained

Josh Mc Morris after finding the shank, he explained:
I left the dorm. I first want to where they had Mr. Spikes secured, which was in a visitation booth. I let him know what I found, "I found your knife." At that time, Mr. Spikes stated to me, "That's okay. I'll just make another one." It wasn't no oral or written statement they let him get on the stand and say that.
"fruit of the poisoneus tree" doctrine - states that once the primary evidence (the "tree") is shown to have been unlawfully obtained, any secondary or derivative evidence (the "fruit") derived from it is also inadmissible

Tittle 42 of U.S. Code Section 1983 - Civil Action for Deprivation of Civil Rights.
Tittle 42 of U.S. Code Section 1985 - Conspiracy to Interfere with Civil Rights
Tittle 42 of U.S. Code Section 1981 - Equal Rights under the Law.
Tittle 18 of U.S. Code, Section 242 - Criminal Liability for Deprivation of Civil Rights
Tittle 18 of U.S. Code Section 241 - Criminal Liability for Conspiracy to Deprive a Person of Rights
Tittle 18 of U.S. Code Section 245 - Violation of Federally Protected Activities

P. 6

Administrative Investigates and Sactions

Infliction or Mental or Emotional Distress - A form of intentional tort consisting of the infliction of severe emotional distress on a person through intentional or reckless extreme and outrageous conduct.

Ethnic violation - Of or relating to sizable groups of people sharing a common and distinctive racial, national, religious, linguistic, or cultural

Amendment VIII: "Excessive bail shall not be required, nor excessive fines imposed nor cruel and unusual punishment inflicted." Tried to get me more than 20 years at the habitual-offender trails

Exparate/Consent Motion for Leave to File Exhibits as to claims against Lewis Murry filed by Jason Jarrell Spikes. (Entered 3/20/18)

peremptory challenge - A challenge to a prospective juror without stating a reason; the challenge is made entirely at the discretion of the challenging party.

The Brady Rule on Disclosure of Evidence to the Accused La. Code Crim P. art 821. In conducting this review, we must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence Lewis Murry knew this but he still ordered the quad bill under 15.529.1.

P.7

§ 24.2 Vindictive Prosecution
24.2A. Generally

Neither the prosecutor nor the judge may retaliate against a defendant for exercising consitution of Statutory rights. This Fourtenth Amendment due process bar against prosecutorial and judicial vindictivness has been interpreted narrowly by the U.S. Suprome Court and the Massachusetts courts, and challenges on those grounds rarely succeed. But at least two defendant whose vindictiveness claims were rejected by the Suprome Judicial Court has adopted a common law principle barring retaliation for appealing that expands the federal due process protection.

These Fourteenth Amendment protects not only against "actual" vindictiveness (e.g., purposely punishing the defendant for appealing), but also against penalties that create the apperance of retaliatory motivation, which if permitted might deter defendants from exercising thier rights. This restrication is particularly significant for defendants who appeal or refuse plea offers.

Lewis Mury had a vindictive prosecution, because my first two trails. The first one they had a hung jury, three attempted murders and possesion to intent schedule two. The second tral was aggravated second degree battery and the jury decided simple battery. The last charge was two counts of contraband. The found me not guilty for synthetic marijuana, but for the shank they found me guilty. The judge gave me 5 years D.O.C. I denied my past convicton. Lewis Mury filed a habitual-offender, and the judge gave

p.08

20 years, and under La. Code Crim. P. art 821 they knew the conviction would not
leave stick                                              Jason Spikes
                                                    Your Signature in Ink


Certificate of Service
I hereby certify that I have served
a copy of this document on all counsel
to record either in person or by mailing
it postage prepaid on this
15   day of August, 2018
        Jason Spikes
        Signature

## CERTIFICATE OF SERVICE

I hereby certify that I have forwarded a copy of the foregoing brief to the

appellant(s), through counsel listed below, as follows:

Party:                    Appellant, Jason Spikes
                          Prentice L.White, Esq.
                          Louisiana Appellate Project
                          P.O. Box 74385
                          Baton Rouge, LA 70874

Method of Service:        email, plwhitelawfirm@bellsouth.net

Date of Service:          _____ September 14, 2017 _____

                                    *Matthew Caplan*
                          Matthew Caplan, LSBA #31650
                          Assistant District Attorney

17

## STATEMENT OF THE FACTS

The defendant's trial involved two separate incidents occurring at the Washington Parish Jail: one incident occurred on February 27, 2016; the other occurred on March 3, 2016. Because the conviction is for the incident occurring on February 27, this statement of the facts focuses on the events of that date.

The pertinent testmony comes from Sgt. Josh McMorris, Warden Jim Miller, and the defendant himself.

### I.

Sgt. McMorris testified that on February 27, 2016, "[i]t was reported to me that one of the officers observed one of the inmates staggering around." R. at 290. He then went to the "control center" and watched a "live view" of Cell Block B. Id. at 290-292. He saw inmate Jason Spikes "stagger[] through the day room to his bunk." Id. at 293). Sgt. McMorris went to Cell Block B to check on Spikes's well-being, then conducted a "shakedown":

> Q:   What did you observe about him, either when you went in there or through the video, when he got on his bunk?
>
> A:   First thing, there was no physical trauma. So we tried to figure out what was wrong with him. At that time, he appeared to be under the influence of something.
>
> Q:   Did you observe that from the video, or once you got in there?
>
> A:   Once we got into the dorm, sir.
>
> Q:   When you got in the dorm, was he still on the bunk?
>
> A:   Yes, sir.
>
> Q:   What did you-all do?
>
> A:   A couple of us helped him up and cuffed him and escorted him up front by the control center.
>
> Q:   What did you do?
>
> A:   I started the shakedown of his bunk.
>
> Q:   Is that his personal bunk?
>
> A:   Yes, sir.
>
> Q:   How do you know that?

5

> A:    We have a bed book in the jail, that we keep up with
>       where inmates stay. Also, when we do searches, we verify
>       that is where that person is at by mail. We print them out
>       ID cards also. Normally, we search for one of those items.
>
> Q:    Did you confirm any of that, that that was Mr. Spikes bed?
>
> A:    Yes, sir.
>
> Q:    What's the first thing you did when you started to search
>       his area?
>
> A:    Naturally, I pulled the blanket and sheet off, placed it on
>       the floor. Went to flip the mat back, and when I flipped
>       the mat back is when I found the handmade shank.

R. at 294-295. See also R. at 311-312 (Sgt. McMorris located mail addressed to Jason Spikes during the shakedown).

Sgt. McMorris described the "shank" as a piece of broken glass "out of the microwave, the turntable plate" which had a hardened toilet paper handle on one end and was sharp enough on the other end to be used for stabbing. R. at 295-297.

After finding the shank, he explained:

> I left the dorm. I first went to where they had Mr. Spikes
> secured, which was in a visitation booth. I let him know what I
> found, "I found your knife." At that time, Mr. Spikes stated to
> me, "That's okay. I'll just make another one."

R. at 297.

On cross-examination, defense counsel asked: "is there anything other than your word that you could show me that it was Jason Spikes' bunk?" Sgt. McMorris answered: "No sir, nothing other than my word." R. at 304.

## II.

Jim Miller, the warden of the parish jail, testified that he authorized the shakedown of the defendant's cell block, and that he later received the shank from Sgt. McMorris, filled out a chain-of-custody form, and submitted it to an evidence officer for safekeeping. R. at 254-257; id. at 260.

6



Office Of The Clerk
## Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

**Rodd Naquin**
**Clerk of Court**

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

### Notice of Judgment and Disposition

December 21, 2017

Docket Number:  2017 - KA - 0655

State of Louisiana
    versus
Jason Spikes

TO:   Matthew  Caplan
      701 N. Columbia Street
      Covington, LA 70433
      mcaplan@22da.com

      Warren LeDoux Montgomery
      701 N. Columbia Street
      Covington, LA 70433
      wmontgomery@22da.com

      Hon. William  J. Knight
      701 N. Columbia Street
      Covington, LA 70433

Frederick  Kroenke  Esq.
Louisiana Appellate Project
707 Rapides Street
Baton Rouge, LA 70806

Prentice Lang White  Esq.
P.O. Box 74385
Baton Rouge, LA 70874
plwhitelawfirm@bellsouth.net

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

RODD NAQUIN
CLERK OF COURT

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in **Jackson v. Virginia,** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. La. Code Crim. P. art. 821. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; **State v. Wright,** 98-0601 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 2000-0895 (La. 11/17/00), 773 So.2d 732. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Captville,** 448 So.2d 676, 680 (La. 1984); **State v. Taylor,** 97-2261 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.

Pursuant to Louisiana Revised Statutes 14:402(A), "No person shall introduce contraband into or upon the grounds of any state correctional institution." "Contraband" means "[a] dangerous weapon, or other instrumentality customarily used or intended for probable use as a dangerous weapon or to aid in an escape[.]" La. R.S. 14:402(D)(2). The defendant does not dispute that a homemade knife was found, but rather, contends that it was not in his possession. According to the defendant, inmates routinely move their belongings to different areas of the cell block, and he did not

4

have any belongings in the area where the homemade knife was found.

Washington Parish Sheriff's Officer Joshua McMorris testified that the defendant was found "staggering" toward the bunk bed where the homemade knife was found. According to Officer McMorris, he knew that the homemade knife belonged to the defendant because (1) it was found in the bunk where the defendant was passed out, (2) the bunk was listed as belonging to the defendant in the prison's record, and (3) a piece of mail addressed to the defendant was in the bunk.

The defendant testified that on the date the knife was found, he was sleeping on the floor on a mattress. He stated that he was on the bunk where the knife was found because he could not see the television from the mattress where he sleeps. He denied being assigned to a bunk and denied knowledge of the knife. The defendant also denied having any mail on or underneath the bunk.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Richardson**, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. **Taylor**, 721 So.2d at 932. Absent a showing that the defendant was not granted the fundamental due process of law, it is not appropriate for this court to impinge on the fact finder's discretion and reject that credibility determination. See **State v. Johnson**, 2003-1228 (La. 4/14/04), 870 So.2d 995, 1000.

## CONCLUSION

The defendant/appellant, Jason Jarrell Spikes, requests that this Honorable Court vacate and set aside his conviction for possession or introduction of contraband in a state correctional institution (to wit: the shank), as well as his adjudication and sentence for being a fourth-felony offender. Spikes asserts that his conviction is invalid because the State failed to present sufficient evidence that the shank found on one of the bunk beds in Cell Block B belonged to him as opposed to the other 33 inmates in the area.

Secondly, the State used insufficient to establish that Spikes was a fourth-felony offender. The fingerprints on the bills of information did not match and the probation officer that was called to testify against him had little to no familiarity to Spikes personally or to the information in his case. Finally, Spikes complains that his sentence, which stemmed from the faulty evidence submitted at the multiple bill hearing, was excessive despite the fact that it was within the statutory guidelines. Further, neither of his predicate convictions would qualify as a crime of violence or a sex offense. Thus, it was manifestly erroneous for the district court to impose a 20-year sentence against him in this matter.

RESPECTFULLY SUBMITTED
LOUISIANA APPELLATE PROJECT

_____
PRENTICE L. WHITE (La. Bar Roll No: 24250)
P.O. BOX 74385
BATON ROUGE, LOUISIANA 70874-4385
TELEPHONE: (225) 235-2928
Email: plwhitelawfirm@bellsouth.net

ATTORNEY FOR APPELLANT,
Jason Spikes.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing appellate brief

could not say definitively that he was either acquainted with Spikes' case or the circumstances as to why he was on probation. Thus, the district court erred in adjudicating Spikes as a fourth felony offender. Likewise, the twenty-year sentence imposed by the district court was excessive considering that the State had not satisfied its burden of proof in the multiple bill hearing.

## LAW AND ARGUMENT

### a. Possession of Contraband (Shank)

A conviction based on insufficient evidence cannot stand as it violates due process.[24]   The constitutional standard for testing the sufficiency of the evidence–as adopted by the Louisiana Legislature in enacting LSA-C. Cr. P. Art. 821–requires that a conviction be based upon proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[25]   The *Jackson* standard is an objective standard of review for testing the overall evidence, both direct and circumstantial, for reasonable doubt. The circumstantial evidence must convince the trier of fact that the evidence excludes every reasonable hypothesis of innocence.[26]

Here, there is overwhelming evidence to suggest that the shank discovered under the mattress in Cell Block B belonged to someone other than Spikes. The officers testified that none of the inmates were assigned[27] to any particular areas in this particular cell block. These inmates would routinely move their belongings to the different areas of the cell block because they would randomly move to different

---

[24]See USCA-Const. Amend. XIV § 1; LSA-Const. Art. I,§ 2.

[25]See *Jackson v. Virginia*, 443 U. S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

[26]See *State v. Graham*, 2002-1492 (La. App. 1 Cir. 2/14/03), 845 So. 2d 416, 420.

[27]See Trial Record p. 311.

bunk beds on different nights. The correctional officers would then record the inmates new areas in pencil due to the sporadic and unpredictable nature of the inmates in this area.[28] Spikes did not have any belongings in the area where the shank was discovered.[29]

Therefore, it is highly probable that the contraband (i.e. the shank) belonged to someone else other than Spikes. This cell block had various video cameras installed to monitor this area on a twenty-four basis.[30] Not one of the tapes from either of those video cameras was shown to the jury. In fact, none of the correctional officers even attempted to view the tape before charging Spikes with this offense.[31]

Logically, none of the inmates who were on the cell block would be expected to appear in court and testified as to the identity of the actual owner of the homemade knife. Hence, the State's entire case hinged on the testimony of correctional officers, one of whom was believed to be responsible for smuggling illegal drugs and other forms of contraband into the prison.[32] Moreover, the correctional officers who have been caught smuggling these items into the prison were never prosecuted–the only penalty they suffered has been termination from the Department of Corrections.

Accordingly, Spikes requests that this Court vacate and set aside his conviction for possession or introduction of contraband in a state correctional institution based on the lack of insufficient evidence to prove that Spikes was the person in possession (actual or constructive) of the shank found in between the mattress[33] and the bed

---

[28]See Trial Record p. 275.

[29]See Trial Record p. 382.

[30]See Trial Record p. 307.

[31]See Trial Record p. 270.

[32]See Trial Record p. 346.

[33]See Trial Record p. 412.

1          <u>REPORTER'S CERTIFICATE</u>

2

3          This certificate is valid only for a

4     transcript accompanied by my original signature

5     and original required seal on this page.

6          I, Ramona Bowlin, Official Court Reporter,

7     in and for the State of Louisiana, employed as

8     an official court reporter by the Twenty-Second

9     Judicial Court for the State of Louisiana, as

10    the officer before whom this testimony was

11    taken, do hereby certify that this testimony was

12    reported by me in the stenomask reporting

13    method, was prepared and transcribed by me or

14    under my direction and supervision, and is a

15    true and correct transcript to the best of my

16    ability and understanding, that the transcript

17    has been prepared in compliance with transcript

18    format guidelines required by statute or by

19    rules of the board or by the Supreme Court of

20    Louisiana, and that I am not related to counsel

21    or to the parties herein nor am I otherwise

22    interested in the outcome of this matter.

23

24

25

26          _Ramona Bowlin_

27          Ramona C. Bowlin, CCR

28          Official Court Reporter

29          Certificate No. 22011

30

31

32

34

```
1              TWENTY-SECOND JUDICIAL DISTRICT COURT

2                     PARISH OF WASHINGTON

3                      STATE OF LOUISIANA

4

5    STATE OF LOUISIANA                      DIVISION "J"

6    VERSUS

7    JASON JARRELL SPIKES              NO: 16-CR6-129868

8    * * * * * * * * * * * * * * * * * * * * * * * * * * *

9

10          TRANSCRIPT OF PROCEEDINGS taken before the

11    Honorable William J. Knight, Judge Presiding,

12    Twenty-Second Judicial District Court, Parish of

13    Washington, State of Louisiana, on the 26th day of

14    June, 2017, in Franklinton, Louisiana.

15

16                                    COPY

17

18   APPEARANCES:

19       LEWIS MURRAY, ESQ.

20       (ON BEHALF OF THE STATE OF LOUISIANA)

21

22

23   REPORTED AND TRANSCRIBED BY:

24       RAMONA C. BOWLIN, CCR

25       OFFICIAL COURT REPORTER

26       CERTIFICATE NO. 22011

27

28

29

30

31

32
```

1

1      significant to meet the original burden

2      of proof.

3  THE COURT:

4           And I understand your argument, Mr.

5      Spikes, I just disagree with it.

6           The Court finds that you are in fact

7      a fourth felony offender, as alleged by

8      the State.  The Court is required to

9      sentence you under 15:529.1A(4)(a).  If

10     the fourth or subsequent felony is such

11     that upon a first conviction the

12     offender would be punishable by

13     imprisonment for any term less than his

14     natural life then the person shall be

15     sentenced to imprisonment for the fourth

16     or subsequent felony for a determinate

17     term not less than the longest

18     prescribed for a first conviction, but

19     in no event less than twenty years and

20     not more than natural life.

21  MR. MURRAY:

22           Your Honor, the State would suggest

23      the Court order a pre-sentence

24      investigation to determine the sentence

25      for Mr. Spikes.  It's clear from this

26      hearing today he's chosen the criminal

27      life.  I think a minimum sentence here

28      would not be warranted.  But I'm not

29      going to sit here and tell you that a

30      life sentence is warranted either, under

31      these circumstances.  However, I do

32      think more than a minimum sentence is.

31

_Jason Spicer_
VS.

CLERK OF COURT/COURT REPORTER
IN AND FOR
_Washington_ PARISH, LOUISIANA

DOCKET NO: _K-CR6-129868_

DIVISION: _N/A_

22 JUDICIAL DISTRICT

PARISH OF _Washington_

ORDER

CONSIDERING THE FOREGOING:

IT IS HEREBY ORDERED that the Court Reporter and/or Clerk of Court, respectively, transcribe and/or produce the below listed items, without cost, within ___ days of the signing of this order:

A.  Guilty Plea/Boykin Transcript............................................( )
B.  Guilty Plea Waiver Form.................................................( )
C.  Sentencing Transcript (If not sentenced at plea hearing)...............( )
D.  Bill of Information/Indictment..........................................( )
E.  Commitment Form.........................................................( )
F.  Court Minutes of All Proceedings Held...................................( )
G.  Copy of all motions filed by either defense or prosecution and any answer(s) thereto (specifically, but not limited to, discovery motion[s]).....................( )
H.  Police Report (If not included in item G)...............................( )
I.  Search Warrant (If not included in item G).............................( )
J.  Arrest Warrant (If not included in item G).............................( )
K.  Affidavit of Probable Cause (If not included in item G)................( )
L.  Coroner's Examination/ Autopsy Report (If not included in item G).....( )
M.  Ballistics Report (If not included in item G)..........................( )
N.  Chemical Analysis Report (If not included in item G)...................( )
O.  Trial Transcript in its entirety (if case proceeded to trial)..........( )
P.  Suppression Hearing Transcript (if held)...............................( )

And provide them to Defendant at the following address:

Concordia Parish Correctional Facility #1
26356 Hwy 15
Ferriday, LA. 71334

_Denied as presented. Does not constitute a proper request for record_

THIS SAID AND DONE ON THIS ___5___ DAY OF ___J___, 20_18_

_____
JUDGE

A True Copy of Original
This _1-11-18_
_TSpears_
Dy Clerk of Court

TENDERED FOR FILING

SEP 21 2018

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

P.1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

Jason Jarrell Spikes                    Civil Action
VS.                                      No. 1738
William J. Knight                        Section: " " ( )

## Pleading

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosection, to find the essential elements of the crime beyond a reasonable doubt. La. Code Crim. P. art. 821. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; State v. Wright, 98-0601 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 2000-0895 (La. 11/17/00), 773 So.2d 732. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocense presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another

P. 2

hypothesis that raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984); State v. Taylor, 97-2261 (La. App. 1 Cir. 9/25/98), 721 So. 2d 929, 932. ~~According to~~

According to the defendant, inmates routinely move their belongings to different ~~areas~~ areas of the cell block, and he did not have any belongings in the area where the homemade knife was found.

Washington Parish's Sheriff's Officer Joshua M^c Morris testified that the defendant was found "staggering" toward the bunk bed where the homemade knife was found. According to Officer M^c Morris, he knew that the homemade knife belonged to the defendant because (1) it was found in the bunk where the defendant was passed out, (2) the bunk was listed as belonging to the defendant in the prison's record, and (3) a piece of mail addressed to the defendant was in the bunk.

The defendant testified that on the date the knife was found, he was sleeping on the floor on a mattress. He stated that he was on the bunk where the knife was found because he could not see the television from the mattress where he sleeps. He denied being assigned to a bunk and denied knowledge of the knife. The defendant also denied having any mail on or underneath the bunk.

The trier of fact is free to accept or reject, in whole or in part, the testimony ~~about the fact and matters the resolution of which~~ of any witness. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of

P. 3

the evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. Taylor, 721 So 2d at 932. Absent a showing that the defendant was not granted the fundamental due process of law, it is not appropriate for this court to impinge on the fact finder's discretion and reject that creditably determination, see State v. Johnson, 2003-1228 (La. 4/14/04), 870 So 2d.

Const. Article IV - Congress may be general Laws prescribe the Manner in which Act's, Records, and Judicial Proceedings shall be proved and the Effect thereof.

① On March 21, 2018, Plaintiff untimely filed an objection (R. Doc. 10) William Knight No. 17638

Judge Knight offered me 15-years where the charge don't carry but 0 to 5. 14.462

Broke my Amendment VIII. "Excessive bail shall not be required, nor excessive fine imposed, nor cruel and unusual punishment inflicted. Sentence me two 20 years for 14.402 a shank. William Knight (R. Doc 10) No. 17638. Also, Ex parte / Consent Motion for Leave to File Exhibits as to claims against Matthew Caplan (Entered: 03/20/2018

Tittle 42 of U.S. Code Section 1983 - Civil Action for Deprivation of Civil Rights

Tittle 42 of U.S. Code Section 1985 - Conspiracy to Interfere with Civil Rights

Tittle 42 of U.S. Code Section 1981 - Equal Rights under the law

Tittle 18 of U.S. Code, Section 242-Criminal Liability for Deprivation of Civil Rights

Tittle 18 of U.S. Code, Section 241-Criminal Liability for Conspiracy to Deprive a Person of Rights

Tittle 18 of U.S. Code, Section 245-Violations of Federally Protected Activities Administrative Investigates and Sactions

The Brady Rule on Disclosure of Evidence to the Accused

La. Code Crim, P, art 821. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The defendant filed motions for post verdict judgment of acquittal and new trail, both of which were denied.

On cross-examination, defense counsel asked: "Is there anything other than your word that you could show me that it was Jason Spikes' bunk." Sgt. McMorris answered: "No sir, nothing other than my word."

## Law and Argument

The officers testified that none of the inmates were assigned to any particular areas in this particular cell block (See Trail Record p. 311) These inmates would routinely move their belongings to the different areas of the cell block because they would randomly move to different bunks beds on different nights. Spikes didn't have any belongings in the area where the shank was discovered. (See Trail Record p. 312)

Therefore, it is highly probable that the contraband (i.e. the shank) belong to someone else other than Spikes. This cell block

P5

had various video cameras installed to monitor this area on a twenty-four basis. (See Trail Record p. 307). Not one of the tapes from either of those video cameras was shown to the jury. In fact, none of the correctional officers even attempted to view the tape before charging Spikes with this offense. (See Trail Record p. 270).

Logically, none of the inmates who were on the cell block would be expected to appear in court and testified as to the identity of the actual owner of the homemade knife. Hence, the State's entire case hinged on the testimony of correctional officers, one of whom was believed to be responsible for smuggling illegal drugs and other forms of contraband into the prison. (See Trail Record p. 346) Moreover, the correctional officers who have been caught smuggling these items into the prison were never prosecuted-the only penalty they suffered has been termination from the Department of Corrections.

Infliction of Mental or Emotional Distress- A form of intential tort consiting of the infliction of sovere emotional distress on a person through intentional or reckless extreme and outrageous conduct.

Ethnic violation- Of or relating to sizable groups of people sharing a common and distinctive racial, national, religous, linguistic, or cultural heritage.

§24.2 Vindictive Prosecution
24.2A Generally
Neither the prosecutor nor the judge may retaliate against a defendant for exercising constitutional or statutory rights. Thus fourteenth

p.6

Amendment due process bar against prosecutorial and judical vindictiveness has been interpreted narrowly by the U.S. Supreme Court and the Massachusetts courts, and challenges on those grounds rarely succeed. But at least two defendants whose vindictiveness claims were rejected by the Supreme Judicial Court afterwards succeeded on federal habeaus corpus claims. And the Supreme Judicial Court afterwards succeeded on federal habeaus corpus has adopted a common law principle barring retaliation for appealing that expands the federal due process protection.

The Fourteenth Amendment protects not only against "actual" vindictiveness (e.g., purposely punishing the defendant for appealing), but also against penalties that create the apperance of retaliatory motivation, which if permitted might deter defendants from excersing their rights. This restriction is particularly significant for defendents who appeal or refuse plea offers.

William J. Knight had a vindictive prosecution, because my first two trials. The first one they had a hung jury, three attempted murders and possession to intent schedule two. The second trail was aggravated second degree and the jury decided simple battery. The last charge was two counts of contraband. The jury found me not guilty for synthetic marijuana, but for the shank they found me guilty. The judge gave me 5 years D.O.C. and denied my post conviction. Lewis Murry filed a habitual offender, and the judge gave me 20 years, and under La. Code Crim. P. art 821 they knew the conviction wouldn't stick.

Jason Spikes
Your Signature in Ink

P. 7

## Certificate of Service

I hereby certify that I have served a copy of this document on all counsel to record either in person or by mailing it postage prepaid on this

15 _____ day of August _____, 2018

Jason Spikes

Signature

## CERTIFICATE OF SERVICE

I hereby certify that I have forwarded a copy of the foregoing brief to the

appellant(s), through counsel listed below, as follows:

Party:                       Appellant, Jason Spikes
                                  Prentice L. White, Esq.
                                  Louisiana Appellate Project
                                  P.O. Box 74385
                                  Baton Rouge, LA 70874

Method of Service:       email, plwhitelawfirm@bellsouth.net

Date of Service:           September 14, 2017

                                          *Matthew Caplan*
                                          Matthew Caplan, LSBA #31650
                                          Assistant District Attorney

## STATEMENT OF THE FACTS

The defendant's trial  involved two separate incidents occurring at the Washington Parish Jail: one incident occurred on February 27, 2016; the other occurred on March 3, 2016. Because the conviction is for the incident occurring on February 27, this statement of the facts focuses on the events of that date.

The pertinent testmony comes from Sgt. Josh McMorris, Warden Jim Miller, and the defendant himself.

### I.

Sgt. McMorris testified that on February 27, 2016, "[i]t was reported to me that one of the officers observed one of the inmates staggering around." R. at 290. He then went to the "control center" and watched a "live view" of Cell Block B. Id. at 290-292. He saw inmate Jason Spikes "stagger[] through the day room to his bunk." Id. at 293). Sgt. McMorris went to Cell Block B to check on Spikes's well-being, then conducted a "shakedown":

> Q: What did you observe about him, either when you went in there or through the video, when he got on his bunk?
>
> A: First thing, there was no physical trauma. So we tried to figure out what was wrong with him. At that time, he appeared to be under the influence of something.
>
> Q: Did you observe that from the video, or once you got in there?
>
> A: Once we got into the dorm, sir.
>
> Q: When you got in the dorm, was he still on the bunk?
>
> A: Yes, sir.
>
> Q: What did you-all do?
>
> A: A couple of us helped him up and cuffed him and escorted him up front by the control center.
>
> Q: What did you do?
>
> A: I started the shakedown of his bunk.
>
> Q: Is that his personal bunk?
>
> A: Yes, sir.
>
> Q: How do you know that?

> A: We have a bed book in the jail, that we keep up with where inmates stay. Also, when we do searches, we verify that is where that person is at by mail. We print them out ID cards also. Normally, we search for one of those items.
>
> Q: Did you confirm any of that, that that was Mr. Spikes bed?
>
> A: Yes, sir.
>
> Q: What's the first thing you did when you started to search his area?
>
> A: Naturally, I pulled the blanket and sheet off, placed it on the floor. Went to flip the mat back, and when I flipped the mat back is when I found the handmade shank.

R. at 294-295. See also R. at 311-312 (Sgt. McMorris located mail addressed to Jason Spikes during the shakedown).

Sgt. McMorris described the "shank" as a piece of broken glass "out of the microwave, the turntable plate" which had a hardened toilet paper handle on one end and was sharp enough on the other end to be used for stabbing. R. at 295-297.

After finding the shank, he explained:

> I left the dorm. I first went to where they had Mr. Spikes secured, which was in a visitation booth. I let him know what I found, "I found your knife." At that time, Mr. Spikes stated to me, "That's okay. I'll just make another one."

R. at 297.

On cross-examination, defense counsel asked: "is there anything other than your word that you could show me that it was Jason Spikes' bunk?" Sgt. McMorris answered: "No sir, nothing other than my word." R. at 304.

## II.

Jim Miller, the warden of the parish jail, testified that he authorized the shakedown of the defendant's cell block, and that he later received the shank from Sgt. McMorris, filled out a chain-of-custody form, and submitted it to an evidence officer for safekeeping. R. at 254-257; id. at 260.

6



Office Of The Clerk
## Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

**Rodd Naquin**
**Clerk of Court**

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

### Notice of Judgment and Disposition

December 21, 2017

Docket Number:  2017 - KA - 0655

State of Louisiana
    versus
Jason Spikes

TO:    Matthew  Caplan
       701 N. Columbia Street
       Covington, LA 70433
       mcaplan@22da.com

       Frederick  Kroenke  Esq.
       Louisiana Appellate Project
       707 Rapides Street
       Baton Rouge, LA 70806

       Warren LeDoux Montgomery
       701 N. Columbia Street
       Covington, LA 70433
       wmontgomery@22da.com

       Prentice Lang White  Esq.
       P.O. Box 74385
       Baton Rouge, LA 70874
       plwhitelawfirm@bellsouth.net

       Hon. William  J. Knight
       701 N. Columbia Street
       Covington, LA 70433

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

 RODD NAQUIN
CLERK OF COURT

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in **Jackson v. Virginia,** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. La. Code Crim. P. art. 821. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; **State v. Wright,** 98-0601 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 2000-0895 (La. 11/17/00), 773 So.2d 732. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Captville,** 448 So.2d 676, 680 (La. 1984); **State v. Taylor,** 97-2261 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.

Pursuant to Louisiana Revised Statutes 14:402(A), "No person shall introduce contraband into or upon the grounds of any state correctional institution." "Contraband" means "[a] dangerous weapon, or other instrumentality customarily used or intended for probable use as a dangerous weapon or to aid in an escape[.]" La. R.S. 14:402(D)(2). The defendant does not dispute that a homemade knife was found, but rather, contends that it was not in his possession. According to the defendant, inmates routinely move their belongings to different areas of the cell block, and he did not

4

have any belongings in the area where the homemade knife was found.

Washington Parish Sheriff's Officer Joshua McMorris testified that the defendant was found "staggering" toward the bunk bed where the homemade knife was found. According to Officer McMorris, he knew that the homemade knife belonged to the defendant because (1) it was found in the bunk where the defendant was passed out, (2) the bunk was listed as belonging to the defendant in the prison's record, and (3) a piece of mail addressed to the defendant was in the bunk.

The defendant testified that on the date the knife was found, he was sleeping on the floor on a mattress. He stated that he was on the bunk where the knife was found because he could not see the television from the mattress where he sleeps. He denied being assigned to a bunk and denied knowledge of the knife. The defendant also denied having any mail on or underneath the bunk.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Richardson**, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. **Taylor**, 721 So.2d at 932. Absent a showing that the defendant was not granted the fundamental due process of law, it is not appropriate for this court to impinge on the fact finder's discretion and reject that credibility determination. See **State v. Johnson**, 2003-1228 (La. 4/14/04), 870 So.2d 995, 1000.

THERIOT, J.

The defendant, Jason Jarrell Spikes, was charged by bill of information with public intimidation, in violation of Louisiana Revised Statutes 14:122, and two counts of possession or introduction of contraband in a state correctional institution, violations of Louisiana Revised Statutes 14:402. The defendant filed a motion to quash and/or sever the bill of information, which the district court granted. The parties then proceeded to trial on the two counts of contraband possession, which were thereafter referred to as counts one and two.[1] The defendant entered a plea of not guilty and, following a jury trial, was found guilty as charged on count one and not guilty on count two.

The defendant filed motions for postverdict judgment of acquittal and new trial, both of which were denied. He was then sentenced to five years at hard labor. The defendant filed a motion to reconsider sentence, which was denied. The State filed a habitual offender bill of information and, after a hearing, the defendant was adjudicated a fourth-felony habitual offender.[2] The district court vacated the original sentence and sentenced the defendant to twenty-year imprisonment at hard labor without the benefit of probation or suspension of sentence. Defense counsel objected to the sentence.

The defendant now appeals, challenging (1) the sufficiency of the evidence presented by the State, (2) the habitual offender adjudication, and (3) the sentence imposed by the district court. For the following reasons, we

---

[1] The date of offense for count one was February 27, 2016. The date of offense for count two was March 3, 2016.

[2] The defendant's predicate offenses were the following: (1) an April 16, 2008 conviction for possession of cocaine under Twenty-Second Judicial District Court ("22nd JDC") docket number 05-CR6-092266, and (2) an April 14, 2009 conviction for two counts of distribution of cocaine under 22nd JDC docket number 08-CR1-99746. Although the State's habitual offender bill of information lists the conviction date as April 13, 2009, for docket number 08-CR1-99746, the minute entry and commitment order in connection with that docket number list the conviction date as April 14, 2009.

2

## CONCLUSION

The defendant/appellant, Jason Jarrell Spikes, requests that this Honorable Court vacate and set aside his conviction for possession or introduction of contraband in a state correctional institution (to wit: the shank), as well as his adjudication and sentence for being a fourth-felony offender.  Spikes asserts that his conviction is invalid because the State failed to present sufficient evidence that the shank found on one of the bunk beds in Cell Block B belonged to him as opposed to the other 33 inmates in the area.

Secondly, the State used insufficient to establish that Spikes was a fourth-felony offender.  The fingerprints on the bills of information did not match and the probation officer that was called to testify against him had little to no familiarity to Spikes personally or to the information in his case.  Finally, Spikes complains that his sentence, which stemmed from the faulty evidence submitted at the multiple bill hearing, was excessive despite the fact that it was within the statutory guidelines.  Further, neither of his predicate convictions would qualify as a crime of violence or a sex offense. Thus, it was manifestly erroneous for the district court to impose a 20-year sentence against him in this matter.

RESPECTFULLY SUBMITTED
LOUISIANA APPELLATE PROJECT

_____
PRENTICE L. WHITE (La. Bar Roll No: 24250)
P.O. BOX 74385
BATON ROUGE, LOUISIANA 70874-4385
TELEPHONE: (225) 235-2928
Email: plwhitelawfirm@bellsouth.net

ATTORNEY FOR APPELLANT,
Jason Spikes.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing appellate brief

## STATEMENT OF JURISDICTION

Jurisdiction of the Court vests under the provisions of Article 5, Section 10 of the Louisiana Constitution 1974. The Louisiana Constitution grants the Courts of Appeal appellate jurisdiction of all criminal cases trial by a jury except those wherein a death penalty was imposed. Additionally, this Court of Appeal has jurisdiction over this matter pursuant to Article 912.1 of the Louisiana Code of Criminal Procedure.

## STATEMENT OF THE CASE

On January 8, 2016, the District Attorney for Washington Parish filed a Bill of Information[1] against the defendant/appellant, Jason Jarrell Spikes (Spikes), for public intimidation, which is a violation of LSA-R.S. 14:22. The allegation stemmed from a report that Spikes supposedly used either violence, force or threats upon Dylan Larocca with the intent to influence his conduct in relation to his employment as a correctional officer.

On January 4, 2017, approximately one year later, the District Attorney amended the Bill of Information to include two additional counts against Spike. Count II was possession of introduction of contraband in a state correctional institution relative to handmade knife commonly referred to as a shank.[2] As to Count III, the State charged Spike with possession or introduction of contraband in a state correctional institution relative to marijuana and/or synthetic cannabinoids supposedly in his possession at the facility. Both charges were violations of LSA-R.S. 14:402.

At the conclusion of all discovery, the district court scheduled this matter for trial. Both parties selected a twelve-member jury, and the State presented its evidence which consisted of testimony from two correctional offices with the Washington

---

[1]See Trial Record p. 22.

[2]Id.

could not say definitively that he was either acquainted with Spikes' case or the circumstances as to why he was on probation. Thus, the district court erred in adjudicating Spikes as a fourth felony offender. Likewise, the twenty-year sentence imposed by the district court was excessive considering that the State had not satisfied its burden of proof in the multiple bill hearing.

## LAW AND ARGUMENT

### a. Possession of Contraband (Shank)

A conviction based on insufficient evidence cannot stand as it violates due process.[24] The constitutional standard for testing the sufficiency of the evidence–as adopted by the Louisiana Legislature in enacting LSA-C. Cr. P. Art. 821–requires that a conviction be based upon proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[25] The *Jackson* standard is an objective standard of review for testing the overall evidence, both direct and circumstantial, for reasonable doubt. The circumstantial evidence must convince the trier of fact that the evidence excludes every reasonable hypothesis of innocence.[26]

Here, there is overwhelming evidence to suggest that the shank discovered under the mattress in Cell Block B belonged to someone other than Spikes. The officers testified that none of the inmates were assigned[27] to any particular areas in this particular cell block. These inmates would routinely move their belongings to the different areas of the cell block because they would randomly move to different

---

[24]See USCA-Const. Amend. XIV § 1; LSA-Const. Art. I,§ 2.

[25]See *Jackson v. Virginia*, 443 U. S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

[26]See *State v. Graham*, 2002-1492 (La. App. 1 Cir. 2/14/03), 845 So. 2d 416, 420.

[27]See Trial Record p. 311.

bunk beds on different nights.  The correctional officers would then record the inmates new areas in pencil due to the sporadic and unpredictable nature of the inmates in this area.[28]  Spikes did not have any belongings in the area where the shank was discovered.[29]

Therefore, it is highly probable that the contraband (i.e. the shank) belonged to someone else other than Spikes.  This cell block had various video cameras installed to monitor this area on a twenty-four basis.[30]  Not one of the tapes from either of those video cameras was shown to the jury.  In fact, none of the correctional officers even attempted to view the tape before charging Spikes with this offense.[31]

Logically, none of the inmates who were on the cell block would be expected to appear in court and testified as to the identity of the actual owner of the homemade knife.  Hence, the State's entire case hinged on the testimony of correctional officers, one of whom was believed to be responsible for smuggling illegal drugs and other forms of contraband into the prison.[32]  Moreover, the correctional officers who have been caught smuggling these items into the prison were never prosecuted–the only penalty they suffered has been termination from the Department of Corrections.

Accordingly, Spikes requests that this Court vacate and set aside his conviction for possession or introduction of contraband in a state correctional institution based on the lack of insufficient evidence to prove that Spikes was the person in possession (actual or constructive) of the shank found in between the mattress[33] and the bed

---

[28]See Trial Record p. 275.

[29]See Trial Record p. 382.

[30]See Trial Record p. 307.

[31]See Trial Record p. 270.

[32]See Trial Record p. 346.

[33]See Trial Record p. 412.

_Jason Spires_
VS.

**CLERK OF COURT/COURT REPORTER IN AND FOR**
_Washington_ PARISH, LOUISIANA

DOCKET NO: _16-CR6-129868_

DIVISION: _N/A_

_22_ JUDICIAL DISTRICT

PARISH OF _Washington_

**ORDER**

**CONSIDERING THE FOREGOING:**

     **IT IS HEREBY ORDERED** that the Court Reporter and/or Clerk of Court, respectively, transcribe and/or produce the below listed items, without cost, within ___ days of the signing of this order:

A.  Guilty Plea/Boykin Transcript...............................................................
B.  Guilty Plea Waiver Form......................................................................( )
C.  Sentencing Transcript (If not sentenced at plea hearing)....................( )
D.  Bill of Information/Indictment............................................................ ( )
E.  Commitment Form...............................................................................( )
F.  Court Minutes of All Proceedings Held...............................................( )
G.  Copy of all motions filed by either defense or prosecution and any answer(s) thereto (specifically, but not limited to, discovery motion[s])........................( )
H.  Police Report (If not included in item G)............................................( )
I.   Search Warrant (If not included in item G)........................................( )
J.   Arrest Warrant (If not included in item G)..........................................( )
K.  Affidavit of Probable Cause (If not included in item G).......................( )
L.  Coroner's Examination/ Autopsy Report (If not included in item G).....( )
M. Ballistics Report (If not included in item G).......................................( )
N.  Chemical Analysis Report (If not included in item G)..........................( )
O.  Trial Transcript in its entirety (if case proceeded to trial)...................( )
P.  Suppression Hearing Transcript (if held)............................................( )

And provide them to Defendant at the following address:

Concordia Parish Correctional Facility #1
26356 Hwy 15
Ferriday, LA. 71334

_Denied as presented._
_Does not comply with state statute. request is not accurate_

**THIS SAID AND DONE ON THIS** ___5th___ **DAY OF** _J___ , 20_18_

_Will___
**JUDGE**

A True Copy of Original
This _1-11-18_
_T Speais_
**Dy Clerk of Court**

Jason J Spikes
537025
David Wade Correctional Center
670 Bell Road
Homer, LA 71040

U.S. District Court Clerk
Eastern District of LA
500 Poydras Street
New Orleans, LA 70130

PRIORITY
* MAIL *

TRACKED
* * *
INSURED

UNITED STATES
POSTAL SERVICE.
For Domestic Use Only

Label 107TL July 2013