# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JASON JARRELL SPIKES** | **CIVIL ACTION** |
| | **NO.    18-08884** |
| | *consolidated with* |
| **VERSUS** | **NOS.    18-09422** |
| | **18-10470** |
| | **18-13668** |
| **STATE OF LOUISIANA, ET AL.** | **SECTION: "I"(3)** |

## REPORT AND RECOMMENDATION

Petitioner, Jason Jarrell Spikes, a Louisiana state prisoner, filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On January 11, 2017, petitioner was convicted under Louisiana law of possession or introduction of contraband in a state correctional facility.[1]  On June 26, 2017, he was found to be a fourth offender and was sentenced as such to a term of twenty years imprisonment without benefit of probation or suspension of sentence.[2]  On December 21, 2017, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence.[3]

Petitioner thereafter began seeking federal habeas corpus relief.  His first petition, which was filed in September of 2018, was docketed as Civil Action No. 18-08884.  He then continued to file additional petitions which were docketed as Civil Action Nos. 18-09422, 18-10470, and 18-

---

[1] State Rec., Vol. 3 of 5, transcript of January 11, 2017, p. 130; State Rec., Vol. 1 of 5, minute entry dated January 11, 2017; State Rec., Vol. 1 of 5, jury verdict form.
[2] State Rec., Vol. 3 of 5, transcript of June 26, 2017; State Rec., Vol. 3 of 5, minute entry dated June 26, 2017.
[3] State v. Spikes, No. 2017KA0655, 2017 WL 6524791 (La. App. 1st Cir. Dec. 21, 2017); State Rec., Vol. 3 of 5.

13668.  Because all four petitions challenged the same above-referenced state criminal judgment, they were consolidated.

In its response to the first three petitions, the state argued that petitioner never sought review of his state criminal judgment by the Louisiana Supreme Court and, as a result, his claims were not exhausted as required by federal law.[4]  Petitioner then filed a reply conceding that he failed to exhaust his remedies in the state courts but requesting that his case be "kept open" until he had time to do so in order to protect his ability to seek federal relief.[5]  Construing that reply as a request that these proceedings be stayed, the Court granted a stay to allow petitioner an additional opportunity to exhaust his remedies in the state courts.[6]

Petitioner then filed a writ application with the Louisiana Supreme Court challenging the Louisiana First Circuit Court of Appeal's judgment affirming his conviction, habitual offender adjudication, and sentence.  On February 18, 2019, the Louisiana Supreme Court refused to consider that writ application on the grounds that it was untimely filed.[7]

On petitioner's motion, these proceedings were then reopened, and the state was ordered to file a supplemental response to the federal applications.[8]  The state has now filed its supplemental response.[9]

The state first argues that petitioner's claims remain unexhausted.  The state is correct.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and

---

[4] Rec. Doc. 36.  Petitioner's fourth habeas corpus petition was not filed until after the state had filed its response.
[5] Rec. Doc. 40.
[6] Rec. Doc. 44.
[7] State v. Spikes, 265 So. 3d 772 (La. 2019); Rec. Doc. 47, p. 4.
[8] Rec. Doc. 46.
[9] Rec. Doc. 49.

correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29

(2004) (quotation marks omitted). The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets

omitted). The United States Fifth Circuit Court of Appeals has further explained:

> When undertaking review, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts. To fairly present the claims, the applicant must present his claims in a procedurally correct manner. Fair presentation does not entertain presenting claims for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor. The purposes of the exhaustion requirement would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it.

Carty v. Thaler, 583 F.3d 244, 254 (5th Cir. 2009) (citations and quotation marks omitted). That

requirement applies to all levels of review in the state court system, meaning that a petitioner's

federal claims must have been fairly presented to "each appropriate state court *(including a state*

*supreme court with powers of discretionary review)*." Baldwin, 541 U.S. at 29 (emphasis added).

Applying those guiding principles, it is clear that the claims in petitioner's federal applications are

unexhausted for the following reasons.

Petitioner has filed only one writ application with the Louisiana Supreme Court concerning

the state criminal judgment challenged herein. With respect to that writ application, the Louisiana

Supreme Court issued a judgment stating: "WRIT NOT CONSIDERED. Untimely filed pursuant to La.S.Ct.R. X § 5."[10]  Because the Louisiana Supreme Court expressly held that his sole writ application was untimely, petitioner has not "fairly presented" any claims to that court. As a result, the exhaustion requirement has not been met. See, e.g., Jackson v. Vannoy, Civ. Action No. 17-00265, 2018 WL 1441154, at *7 (E.D. La. Feb. 27, 2018) ("[Petitioner]'s writ application to the Louisiana Supreme Court was not considered by the Court because it was not timely filed. It is clear that a claim presented in an untimely writ application has not been 'fairly presented' for exhaustion purposes. … Therefore, these … claims … were not presented to the Louisiana Supreme Court in a procedurally proper manner and cannot be considered to have been exhausted."), adopted, 2018 WL 1409270 (E.D. La. Mar. 21, 2018). Therefore, petitioner's claims could be dismissed *without* prejudice on that basis.

That said, the state argues that the Court should nevertheless consider the claims on the merits and simply deny them as meritless. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Because the claims are indeed meritless for the following reasons, and because a denial on the merits would be *with* prejudice, the undersigned agrees that is the best course in the interest of judicial economy.

### I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments modified a federal habeas court's role in

---

[10] State v. Spikes, 265 So. 3d 772 (La. 2019); Rec. Doc. 47, p. 4.

reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

       If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (emphasis added; citations omitted); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

       The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein. White v. Woodall,

572 U.S. 415, 417 (2014).

## **II.  Facts**

       On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts relating

to petitioner's conviction as follows:

       On February 27, 2016, officers with the Washington Parish Sheriff's Office noticed a few inmates, including the defendant, behaving in an unusual manner. The defendant was "staggering around" toward his bunk and appeared to be impaired. The defendant was later found passed out on his bunk. In response to the unusual behavior, the officers cleared the inmates from their cell block and searched the cells. During the search, the officers pulled back the blankets on the defendant's bunk, flipped back the mat, and found a homemade knife. When the

defendant was told that the officers found his knife, he responded, "That's okay. I'll just make another one."[11]

### III.  Petitioner's Claims

In the Order staying these proceedings, this Court noted:  "[B]ecause petitioner's claims are not concisely stated, once this case is reopened he will be required to supplement his filings with a pleading which clearly identifies each claim he is asserting …."[12]  Petitioner has now complied with that requirement by listing the claims he is asserting in these consolidated proceedings in his motion to reopen.[13]  He identifies his claims as follows:

1.    The assistant district attorney made false statements in his appellate brief;

2.    The assistant district attorney engaged in misconduct in the trial court;

3.    The trial judge misstated petitioner's sentence;

4.    There was insufficient evidence to support petitioner's conviction;

5.    The state's witnesses committed perjury;

6.    Petitioner's trial counsel was ineffective; and

7.    "The supervisor was personally involved."

For the following reasons, petitioner's claims do not warrant federal habeas corpus relief.

### A.  Prosecutorial Misconduct on Appeal

Petitioner claims:  "The assistant district attorney, Matthew Caplan, made false statements in his brief on direct appeal."[14]  However, petitioner's claim is wholly conclusory – he fails to identify even a single statement in the brief which was allegedly false.  That alone is obviously fatal to his claim because, in federal habeas proceedings, "[t]he petitioner carries the burden of

---

[11] State v. Spikes, No. 2017KA0655, 2017 WL 6524791, at *1 (La. App. 1st Cir. Dec. 21, 2017); State Rec., Vol. 3 of 5.
[12] Rec. Doc. 44, p. 9 n.9.
[13] Rec. Doc. 45, pp. 6-16.
[14] Rec. Doc. 45, p. 6.

proof." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011).  In any event, the Court has reviewed the brief[15] and found no demonstrably false statements therein.

### B. Prosecutorial Misconduct in the Trial Court

Petitioner claims that Assistant District Attorney Lewis Murray engaged in the following purported misconduct in the trial court.

First, petitioner argues:  "Murray offered me ten with the bill for two counts of contraband possession violations of R.S. 14:402.  Where he could've offered me is five with the bill for one count, and five with the bill for the other count in violations of R.S. 14:402."[16]  This argument appears to be based on the fact that, except for drug-related contraband offenses, the maximum penalty for a single count of violating La. Rev. Stat. Ann. § 14:402 was only five years at the time of petitioner's offenses in 2016.  However, that is of no moment, because petitioner was not charged with a single count; he was charged with *two* counts, one of which involved drug-related contraband which carried a longer potential sentence.[17]  Moreover, he faced enhanced penalties as a habitual offender.  Therefore, even if the prosecutor did in fact offer a "package deal" of ten years total if petitioner pleaded guilty to both charged offenses, that offer was not inappropriate.

Second, petitioner alleges that Murray "challenged all black people off [petitioner's] jury."[18]  The Court will liberally construe that allegation as an attempt to assert a claim pursuant to <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).  In <u>Batson</u>, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  <u>Id.</u> at 89.

---

[15] The brief is contained in Volume 5 of the state court record.
[16] Rec. Doc. 45, pp. 6-7.
[17] State Rec., Vol. 1 of 5, bill of information.  Petitioner was acquitted on the drug-related count at trial.
[18] Rec. Doc. 45, p. 7.

The record reflects that Murray used peremptory challenges to remove Cassandra Jones, Sylvia Burkhalter, Sylvia Brumfield, Trevor Truax, Jon Sorey, and Rebecca Toler from the first voir dire panel. At that point, defense counsel raised a <u>Batson</u> challenge:

> MR. KNIGHT [defense counsel]:
> Judge, I'm not sure when I make a Batson objection, but I think Mr. Murray is indicating that he's taken off all the black people, with the exception of Ms. [Toscha] Harry. I would, at this point, for the record, make a Batson objection. I've never done it before and I don't know the procedure.

> THE COURT:
> Let the record reflect of the twenty-four prospective jurors who were seated six of those individuals are black, or appear to be from visual observation. Ms. [Ernestine] Abrams was jointly moved to be excused for cause, and Ms. Abrams is a black female. The other black potential jurors were Ms. Jones, Mr. Burkhalter, Mr. Brumfield, Ms. Harry, and Ms. Toler. Mr. Murray has made challenges on all of those, except Ms. Harry. So as to each juror, beginning with Ms. Jones, if you would articulate the State's race neutral reasons.

> MR. MURRAY:
> Your Honor, the State does not believe that there is a pattern of exclusion, but I will give you my reasons. Ms. Cassandra Jones at first did not want to serve, and at one point explained that she was with Mr. Knight. She seemed to be very responsive to talking to Mr. Knight. Ms Sylvia Burkhalter had served as a juror in a drug case where the defendant was found not guilty. Ms. Brumfield clearly did not want to serve and looked very disinterested in the process. She maybe was not as exuberant as Ms. Jones was, but she did not want to serve. And, Ms. Toler, the defendant's either mother or grandmother was a Toler, Lynn Toler from Bogalusa. So even though she denied knowing Mr. Spikes –

> MR. KNIGHT:
> I'm not sure what the Toler connection is.

> MS. MURRAY:
> His mother or grandmother was a Toler.

> MR. SPIKES:
> My mother is a Toler from California. She married a man in California.

> MR. KNIGHT:
> She married a California Toler.

> MR. MURRAY:
> Well, that's the reason I excused her.

THE COURT:

The Court finds the reasons articulated by the State are sufficient to overcome the Batson challenge.

MS. KNIGHT:

Please note my objection to the Court's ruling.

THE COURT:

The record would so reflect. The Court would further note that both Ms. Jones and Ms. Brumfield attempted rather stringently with the Court to be excused from jury service during the qualification process. The Court did note their reluctance to serve. That is also true of Ms. Abrams, who was excused for cause by both sides, just to make the record complete. It really is a non-issue otherwise.[19]

Pursuant to clearly established federal law, a three-step process is used to analyze <u>Batson</u> challenges:

First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

<u>Snyder v. Louisiana</u>, 552 U.S. 472, 476-77 (2008) (quotation marks and brackets omitted).

In the instant case, this Court need not determine whether petitioner met his burden at the first step. Where, as here, "a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." <u>Hernandez v. New York</u>, 500 U.S. 352, 359 (1995) (plurality opinion); <u>accord</u> <u>United States v. Williams</u>, 264 F.3d 561, 571 (5th Cir. 2001).

---

[19] State Rec., Vol. 2 of 5, transcript of January 10, 2017, pp. 78-80. The record further reflects that Murray used peremptory challenges to remove Raykeisha Simmons, Teresa Dendinger, Celia Cutrer, and Tyran Holmes from the second voir dire panel. However, defense counsel did **not** make a <u>Batson</u> challenge as to the removal of any of those jurors, and their races are not reflected in the record. Because there was no <u>Batson</u> challenge with respect to these jurors, they need not be considered in the Court's analysis.

At the second step of the <u>Batson</u> analysis, the prosecutor's explanation for his challenges "need not rise to the level justifying exercise of a challenge for cause." <u>Batson</u>, 476 U.S. at 97. "Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not *inherently* discriminatory, it suffices." <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006) (emphasis added; quotation marks and brackets omitted).  In other words, all that is required is "[a] neutral explanation," which in this context "means an explanation based on something other than the race of the juror.  At this step of the inquiry, the issue is the *facial validity* of the prosecutor's explanation.  Unless a discriminatory intent is *inherent* in the prosecutor's explanation, the reason offered will be deemed race neutral." <u>Hernandez</u>, 500 U.S. at 360 (emphasis added).  In the instant case, the prosecutor's stated reasons were not inherently indicative of an intent to discriminate based on race, and, therefore, they satisfied the state's minimal burden at this second step.

At the third step of the <u>Batson</u> analysis, the trial court must determine "whether the defendant has carried his burden of proving purposeful discrimination." <u>Collins</u>, 546 U.S. at 338. At this step, it must be remembered that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." <u>Id.</u>

When evaluating the persuasiveness of a prosecutor's proffered justification, the trial court must be mindful that "[a] prosecutor's intuitive assumptions, inarticulable factors, or even hunches can … be proper bases for rejecting a potential juror." <u>United States v. Thompson</u>, 735 F.3d 291, 297 (5th Cir. 2013).  Also:

> [C]ourts do not assess whether counsel's reason is suspect, or weak, or irrational. Instead, courts address whether counsel is telling the truth in his or her assertion that the challenge is not race-based.  In determining whether a prosecutor discriminated on the basis of race, a court should consider the totality of the relevant facts.

Id. (citations and quotation marks omitted).

Moreover, the United States Supreme Court has held that the state court's finding on Batson's third step is a finding of *fact* and, as such, must be reviewed under the AEDPA's specific and highly deferential standard of review applicable to factual determinations.  Therefore:

> Under AEDPA, … a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  *Thus, a federal habeas court can only grant [the petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge.  State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence."* § 2254(e)(1).

Collins, 546 U.S. at 338-39 (2006) (emphasis added); accord Foster v. Chatman, 136 S. Ct. 1737, 1747 (2016) (Batson's third step "turns on factual determinations, and, in the absence of exceptional circumstances, we defer to state court factual findings unless we conclude that they are clearly erroneous." (quotation marks omitted)); Murphy v. Dretke, 416 F.3d 427, 432 (5th Cir. 2005) ("A state trial court's finding of the absence of discriminatory intent is a pure issue of fact that is accorded great deference and will not be overturned unless clearly erroneous." (quotation marks omitted)).  Therefore, even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, … on habeas review that does not suffice to supersede the trial court's credibility determination."  Collins, 546 U.S. at 341-42; accord Wood v. Allen, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

Here, it must be noted that all of the prosecutor's proffered reasons for his peremptory challenges of the four African-American jurors were in fact supported by the voir dire transcript. Burkhalter stated that she had served on a prior jury that acquitted the defendant.[20]  Toler stated

---

[20] State Rec., Vol. 4 of 5, transcript of January 10, 2017, p. 27.

that she was related to the "Tolers that live in Bogalusa" who were related to petitioner.[21]  Jones stated that she did not want to there,[22] Brumfield stated that she did not want to be on the jury,[23] and the trial judge observed that Jones and Brumfield did in fact "rather stringently" attempt to be excused from jury service.[24]

Further, it must also be noted that petitioner's <u>Batson</u> claim was wholly conclusory in the trial court and remains so here.  For example, at trial, defense counsel did not challenge the veracity of the prosecutor's reasons for the strikes in any way, such as by engaging in a comparative juror analysis by identifying seemingly similar non-minority potential jurors and requesting that the prosecutor be required to explain why the minority jurors were struck while those non-minority jurors were not.  Simply put:  neither at trial nor at any point thereafter has petitioner ever pointed to any *evidence,* much less the clear and convincing evidence required under § 2254(e)(1), on which this Court could conclude that the prosecutor's peremptory challenges were motivated by an intent to discriminate.

In light of all of these considerations, petitioner failed his to meet his burden to establish a <u>Batson</u> violation, and, therefore, the AEDPA's standard of review requires this Court to defer to the state court decision and deny this claim.

Third, petitioner argues that his right to "Individually [sic] Dignity" was violated when Murray referred to him as "James" Spikes, the name of petitioner's father who is serving a life sentence.[25]  Petitioner does not point to any section or sections of the transcript where this

---

[21] <u>Id.</u> at p. 51.
[22] <u>Id.</u> at p. 55.
[23] <u>Id.</u> at p. 56.
[24] <u>Id.</u> at p. 80.
[25] Rec. Doc. 45, p. 7.

occurred; however, the Court notes that it did happen on at least one occasion in passing during closing argument.[26]  Nevertheless, habeas corpus relief is unwarranted for the following reasons.

The United States Fifth Circuit Court of Appeals has explained:

> Even if ... [a] prosecutor's remarks [are] improper, prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair.  Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (footnote, internal quotation marks, and ellipsis omitted); accord Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1989).  In other words, a prosecutor's remarks warrant habeas relief only if they were "a crucial, critical, highly significant factor upon which the jury based its verdict."  Harris, 313 F.3d at 245.

As an initial matter, the Court notes that there is no indication that the prosecutor's use of the name "James" rather than "Jason" was anything more than an inadvertent error.  To conclude that there was something nefarious in the seemingly innocent mistake seems unreasonable.

Further, and most importantly, it simply cannot be reasonably said that this mistake played a significant factor in the jury's verdict.  There is no reason to believe that the jurors would have even known that James Spikes was a convicted criminal or would use that familial connection as a basis to return a guilty verdict in this unrelated matter.  Therefore, this claim should be rejected.

### C.  Misstatement of Sentence

Petitioner claims that "[t]he trial judge misstated the sentence" when he "offered [petitioner] 15 years for a contraband charge, marijuana, where it's [sic] only carry 0 to 5 in

---

[26] State Rec., Vol. 3 of 5, transcript of January 11, 2017, p. 87 ("But the credible evidence that you've heard and seen in this case shows that on February 27, 2016, Mr. James [sic] Spikes was found in possession of a shank or a weapon, dangerous weapon, in the jail.").

violations of R.S. 14:402."[27]  This claim appears to be related to fact that petitioner was originally charged with a second contraband offense concerning possession of marijuana or a synthetic cannabinoid.[28]  As an initial matter, the Court notes that the judge's actions with respect to that charge are largely irrelevant because petitioner was *acquitted* of that charge at trial.  Nevertheless, in any event, petitioner's underlying premise is wrong.  It is true that at the time of petitioner's offense, the maximum sentence for a contraband charge was generally five years; *however,* when the contraband was a controlled dangerous substance, the defendant was subject to the more onerous sentencing provisions provided under the applicable drug laws.  See State v. Modica, 210 So. 3d 962, 963-64 (La. App. 5th Cir. 2017) (holding that the maximum sentence for a contraband charge involving cannabinoids was thirty – not five – years).  Therefore, this claim has no merit.

### D.  Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant contends that the district court erred in accepting the jury's verdict. According to the defendant, the State failed to adequately establish that the homemade knife was among the defendant's belongings and not that of the other inmates housed in the same section of the prison.
>
> A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. La. Code Crim. P. art. 821. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; State v. Wright, 98-0601 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 2000-0895 (La. 11/17/00), 773 So.2d 732. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence

---

[27] Rec. Doc. 45, p. 7.
[28] State Rec., Vol. 1 of 5, bill of information.

presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984); State v. Taylor, 97-2261 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.

Pursuant to Louisiana Revised Statutes 14:402(A), "No person shall introduce contraband into or upon the grounds of any state correctional institution." "Contraband" means "[a] dangerous weapon, or other instrumentality customarily used or intended for probable use as a dangerous weapon or to aid in an escape[.]" La. R.S. 14:402(D)(2). The defendant does not dispute that a homemade knife was found, but rather, contends that it was not in his possession. According to the defendant, inmates routinely move their belongings to different areas of the cell block, and he did not have any belongings in the area where the homemade knife was found.

Washington Parish Sheriff's Officer Joshua McMorris testified that the defendant was found "staggering" toward the bunk bed where the homemade knife was found. According to Officer McMorris, he knew that the homemade knife belonged to the defendant because (1) it was found in the bunk where the defendant was passed out, (2) the bunk was listed as belonging to the defendant in the prison's record, and (3) a piece of mail addressed to the defendant was in the bunk.

The defendant testified that on the date the knife was found, he was sleeping on the floor on a mattress. He stated that he was on the bunk where the knife was found because he could not see the television from the mattress where he sleeps. He denied being assigned to a bunk and denied knowledge of the knife. The defendant also denied having any mail on or underneath the bunk.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. Taylor, 721 So.2d at 932. Absent a showing that the defendant was not granted the fundamental due process of law, it is not appropriate for this court to impinge on the fact finder's discretion and reject that credibility determination. See State v. Johnson, 2003-1228 (La. 4/14/04), 870 So.2d 995, 1000.

The guilty verdict in this case indicates the jury rejected the defendant's claim that the homemade knife did not belong to him. Testimony established that the defendant was on the bunk at the time the knife was found and there was a piece of mail addressed to the defendant on the bunk. Moreover, when told that the knife was found, the defendant responded that he would "just make another one." Considering the evidence presented during the trial, the jury could have reasonably concluded that the knife belonged to the defendant. Thus, in reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662.

Further, in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder, a court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law.  See State v. Mire, 2014-2295 (La. 1/27/16), —— So.3d ——, —— (per curiam).  An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury.  State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).  After a thorough review of the record, viewing the evidence presented in this case in the light most favorable to the State, we are convinced that a rational trier of fact could find that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of the offense.  Accordingly, this assignment of error is without merit.[29]

Because a claim challenging the sufficiency of the evidence presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Davila v. Davis, 650 F. App'x 860, 866 (5th Cir. 2016), aff'd, 137 S. Ct. 2058 (2017).[30] For the following reasons, the Court finds that he has made no such showing.

As the Louisiana First Circuit Court of Appeal correctly noted, claims challenging the sufficiency of the evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather

---

[29] State v. Spikes, No. 2017KA0655, 2017 WL 6524791, at *2-3 (La. App. 1st Cir. Dec. 21, 2017); State Rec., Vol. 3 of 5.

[30] Although there is no Louisiana Supreme Court ruling on the merits of petitioner's sufficiency claim, "[t]he deference afforded by § 2254(d)(1) is not limited to adjudications by the state's highest court, but includes adjudications by state intermediate appellate and trial courts."  Brian R. Means, Federal Habeas Manual § 3:21 (2018).

whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 567 U.S. 37, 43 (2012); see also Coleman v. Johnson, 566 U.S. 650, 651 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 F. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 566 U.S. at 655 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires

to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Here, the homemade knife was found in a jail bunk. That bunk was connected to petitioner by three means: (1) it was where he was passed out; (2) it was listed as his bunk in the jail records; and (3) his mail was in the bunk. Further, when petitioner was told that the knife had been found, he responded, "That's okay. I'll just make another one." That evidence, if believed by the jurors, was clearly sufficient for the jury to conclude that the knife belonged to petitioner.

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## E.  Perjury

Petitioner claims that some of the state's witnesses committed perjury at trial.[31] However, "[i]n order for such an allegation of perjured testimony to constitute a due process violation, [a petitioner] must show that the prosecution knowingly presented materially false evidence to the jury." Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (quotation marks omitted). Here, petitioner has failed to prove that the testimony at issue was in fact false, much less that the prosecution was aware of that fact. Although he points to instances in which the testimony of some witnesses contradicted the testimony of other witnesses, that is not determinative. Such contradictions merely present questions of credibility for the jury; they are not sufficient to

---

[31] Rec. Doc. 45, pp. 10-11.

establish perjury.  See id.; see also George v. Kent, Civ. Action No. 16-1968, 2017 WL 6017756, at *21 (E.D. La. Aug. 17, 2017), adopted, 2017 WL 5992076 (E.D. La. Dec. 4, 2017), certificate of appealability denied, 2018 WL 7458660 (5th Cir. Sept. 25, 2018), cert. denied, 139 S. Ct. 1276 (2019).  Therefore, this claim should be denied.

### F.  Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective.  The United States Supreme Court has established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting

Strickland, 466 U.S. at 690).  The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner first claims that his counsel was ineffective for allowing Assistant District Attorney Murray to offer a "package deal" plea bargain on both charged counts for a total term of ten years imprisonment rather than a five-year plea bargain on each count.[32]  However, petitioner had no constitutional right to a plea deal *at all*, and certainly not one solely on his own terms.  See Nguyen v. United States, 114 F.3d 699, 704 (8th Cir. 1995) ("There is no constitutional right to plea bargain.  It is the prosecutor's prerogative to offer a 'package deal' or no deal at all." (quotation marks and brackets omitted)).  In light of that fact, it would not have been possible for defense counsel to force the state to offer a plea bargain on such terms, and so counsel's failure to do so cannot constitute ineffective assistance.  See, e.g., United States v. Cronic, 466 U.S. 648, 656 n.19 (1984) ("[T]he Sixth Amendment does not require that counsel do what is impossible ...."); Franklin v. Thompson, Civ. Action No. 07-543, 2007 WL 3046642, at *11 (E.D. La. Oct. 17, 2007) ("Counsel cannot be considered ineffective for failing to accomplish the impossible.").

---

[32] Rec. Doc. 45, p. 12.

Petitioner next claims that his counsel was ineffective for allowing the judge to offer a fifteen-year sentence on the contraband charge concerning possession of marijuana or a synthetic cannabinoid.[33]  However, as noted *supra*, petitioner was *acquitted* on that charge.  Moreover, as previously explained, petitioner faced a sentence of up to thirty years on that charge, and defense counsel had no ability to require the judge to extend *any* offer below the statutory maximum.

Petitioner also claims that his counsel was ineffective for allowing Murray to "put a statement in my trial that wasn't written or oral."[34]  However, petitioner does not identify to which statement he is referring, and it is not apparent to the Court.  This conclusory allegation supplies no basis for relief.

Petitioner next claims that his counsel was ineffective for not objecting when Officer Morris testified that petitioner stated that he would make another knife.[35]  However, because that testimony was admissible, any objection would have been meritless.[36]  Obviously, a "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."  Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

Petitioner further claims that his counsel was ineffective for failing to argue that the jury must apply Louisiana's rule regarding circumstantial evidence.[37]  See La. Rev. Stat. Ann. § 15:438 ("The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence

---

[33] Id.
[34] Id.
[35] Id.
[36] Petitioner seems to suggest that an objection based on the fact that petitioner was not advised of his Miranda rights would have led to the exclusion of the statement by the trial court.  See Miranda v. Arizona, 384 U.S. 436 (1966).  That is incorrect.  At the time petitioner made the statement, he was not being interrogated; rather, the statement was made immediately after Officer McMorris simply told petitioner that his knife had been found during the search.  State Rec., Vol. 2 of 5, transcript of January 10, 2017, p. 236.   Therefore, the trial court would have overruled any such objection.  See, e.g., State v. George, 371 So. 2d 762, 766 (La. 1979) ("In Miranda the United States Supreme Court observed: 'By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'  Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings even where a defendant is in custody.").
[37] Rec. Doc. 45, pp. 12-13.

tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."). Petitioner contends: "[T]hat's all he had to say too [sic] the jury and they would've found me not guilty."[38]  However, that contention is wholly unconvincing in light of the fact that the very same rule was explained by the judge in his jury instructions.[39]  Therefore, petitioner cannot show that any prejudice resulted from counsel's failure to also expressly mention the evidentiary rule in his closing argument.

Petitioner next claims that his counsel was ineffective for advising him not to testify at trial because he could be questioned concerning his criminal history.[40]  After the jurors exited the courtroom, defense counsel stated on the record that he had in fact advised petitioner against testifying:

> MR. KNIGHT:
> I'd like the record to reflect, Your Honor, that the defendant has told me that he wants to take the witness stand, that he wants to testify in this matter.  I have advised him, based upon my expertise, such as it is, not to testify in the case.  If he takes the witness stand and testifies in this case, I just want the record to reflect clearly that it is against my better judgment that he take the witness stand and that he is doing so against my advice.
>
> THE COURT:
> Mr. Spikes, you have an absolute right to testify or not to testify.  That's strictly up to you.  Obviously, I've already instructed the jury that they're not to hold your silence against you in any way, and I will do that again during closing instructions.  That said, it's your right to testify; it's your right not to.  Generally speaking, lawyers are the experts in the courtroom.  Generally speaking, it's a good idea to listen to your lawyer, but it's your choice.[41]

Petitioner nevertheless insisted on taking the stand, and, as his counsel predicted, he was in fact cross-examined extensively about his criminal history, which, according to his own

---

[38] Id. at p. 13.
[39] State Rec., Vol. 3 of 5, transcript of January 11, 2017, p. 115 ("When only circumstantial evidence is presented, you cannot find a defendant guilty unless you exclude every reasonable theory of innocence.").
[40] Rec. Doc. 45, p. 13.
[41] State Rec., Vol. 3 of 5, transcript of January 11, 2017, pp. 50-51.

testimony, included two convictions for distribution of cocaine, one for possession of cocaine, one for possession of marijuana, and one for simple battery for beating a fellow inmate with a broomstick.[42]   Accordingly, defense counsel's advice was in fact accurate.  "[A]ccurate advice cannot support an ineffective assistance of counsel claim."  Ennis v. United States, Nos. EP-06-CA-0016 and EP-02-CR-1430, 2007 WL 4570377, at *9 (W.D. Tex. Dec. 20, 2007); accord King v. Johnson, No. 97-20419, 1998 WL 110056 (5th Cir. Feb. 19, 1998) ("Since counsel's advice was a correct statement of Texas law, King cannot demonstrate deficient performance.").

Petitioner next makes a convoluted argument concerning the lack of fingerprint evidence during the habitual offender proceeding.[43]   However, it is unclear precisely what point petitioner is attempting to make.

If he is trying to argue that he did not receive effective assistance of counsel in the habitual offender proceedings, it must be noted that he elected to represent himself in those proceedings.[44] Therefore, he cannot now claim he was denied the effective assistance of counsel.  Faretta v. California, 422 U.S. 806, 834 n.46 (1975) ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").

In any event, whatever point petitioner is attempting to make regarding the sufficiency of the evidence presented to establish his habitual offender status, the Louisiana First Circuit Court of Appeal held that there was in fact sufficient evidence to support his habitual offender adjudication:

> [T]he defendant argues that the evidence presented by the State at the habitual offender hearing was insufficient to establish his identity as the person convicted of the predicate convictions.  Specifically, the defendant contends that the probation

---

[42] State Rec., Vol. 3 of 5, transcript of January 11, 2017, pp. 63-67.
[43] Rec. Doc. 45, pp. 13-14.
[44] State Rec., Vol. 5 of 5, transcript of June 26, 2017.

officer who testified did not personally supervise him and that the fingerprints on the bills of information in connection with the predicate offenses did not match his fingerprints.

To obtain a multiple-offender adjudication, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. In attempting to do so, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical driver's license number, sex, race, and date of birth. State v. Payton, 2000-2899 (La. 3/15/02), 810 So.2d 1127, 1130. The Habitual Offender Act does not require the State to use a specific type of evidence in order to carry its burden at the hearing, and the prior convictions may be proved by any competent evidence. Payton, 810 So.2d at 1132.

Herein, the habitual offender bill of information alleged the following prior convictions: (1) an April 16, 2008 conviction for possession of cocaine under 22nd JDC docket number 05-CR6-092266; and (2) an April 14, 2009 conviction for two counts of distribution of cocaine under 22nd JDC docket number 08-CR1-99746.

At the habitual offender hearing, the State introduced into evidence certified copies of the defendant's testimony from the trial of the instant offense, wherein the defendant admitted that he was convicted of possession of cocaine and two counts of distribution of cocaine. The State also offered into evidence and asked the district court to take judicial notice of the records from the defendant's predicate offenses. The district court accepted them into evidence and noted that duplication was unnecessary because it had the original records. The State noted that the records contained rights forms and/or advice of rights forms for the guilty pleas entered by the defendant. The bills of information for the defendant's instant and predicate offenses bear the same name, date of birth, address, and last four social security number digits. Additionally, the bills of information in connection with docket number 08-CR1-99746 and the instant offense bear the same state identification number.

The State also presented the testimony of Aaron Moran, an employee with the Louisiana Division of Probation and Parole. Moran testified that he supervised the defendant's case under "administrative parameters," explaining that the case was transferred to him after the defendant's parole officer retired. The defendant was incarcerated at the time Moran received his case. Moran identified the defendant and stated that he recognized him. Moran further testified that he supervised the defendant and served the defendant with a notice of parole violation on a charge that he incurred while incarcerated. Moran also testified that the defendant was the same person that his department had under supervision.

The defendant also testified at the hearing and argued that the prior felony convictions that he admitted to during the trial of the instant offense were entered when he was a juvenile.

At the conclusion of the testimony, the district court noted that during the trial on January 11, 2017, the defendant indicated that he had been convicted of simple possession of cocaine and two counts of distribution. The district court pointed out that there was no testimony as to whether those convictions were

entered when the defendant was a juvenile and that on cross-examination, the defendant again stated that he had been convicted of simple possession of cocaine and two counts of distribution without reference to being a juvenile at the time of those convictions. The district court further noted that during the defendant's testimony, he stated that on the date of the instant offense, he was "backing up parole time on the two counts of distribution and the simple possession of [he was] convicted of in 2009." As noted by the district court, that testimony corresponds with the records of the predicate offenses. The district court also stated that the date of birth listed for the defendant was the same in the predicate records and the instant offense and the same address was utilized. Further, the district court pointed out that Moran identified the defendant in court.

Moreover, contrary to the defendant's assertion that the fingerprints on the bills of information in connection with the predicate convictions did not match those on the bill of information in connection with the instant offense, the district court specifically stated that the issue was not that the fingerprints did not match but that the fingerprints on the bills of information in connection with the predicate offenses were not of sufficient quality to provide for a comparison. Accordingly, the State presented sufficient evidence to establish that the defendant was the same person who pled guilty to the three prior felony offenses. Therefore, this assignment of error is without merit.[45]

In light of that ruling and petitioner's failure to present any evidence whatsoever demonstrating that he was not in fact a fourth offender, the Court has no basis for concluding that he is entitled to relief concerning his habitual offender adjudication.

Petitioner next faults his counsel for failing to file post-verdict motions.[46] However, the record reflects that counsel did in fact file a motion for a post-verdict judgment of acquittal, a motion for new trial, and a motion to reconsider sentence after the original sentencing.[47]

Further, to the extent that petitioner is arguing that counsel should have filed *another* motion to reconsider sentence *after* the habitual offender proceedings and resentencing, it must again be noted that petitioner acted as his own counsel in those proceedings. Moreover, in any event, there was no viable basis for a motion to reconsider the habitual offender sentence. As

---

[45] State v. Spikes, No. 2017KA0655, 2017 WL 6524791, at *3-4 (La. App. 1st Cir. Dec. 21, 2017); State Rec., Vol. 3 of 5.
[46] Rec. Doc. 45, p. 13.
[47] State Rec., Vol. 4 of 5.

already noted *supra*, the Louisiana First Circuit Court of Appeal held that petitioner was correctly

found to be a fourth offender.  The Court of Appeal also determined that his habitual offender

sentence was not excessive, holding:

> [T]he defendant argues that the sentence imposed by the district court is excessive. Specifically, the defendant contends that because his predicate convictions were "non-violent and not sex related[,]" the sentence imposed by the district court was excessive.
>
> Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment.  Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review.  State v. Sepulvado, 367 So.2d 762, 767 (La. 1979).  A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless imposition of pain and suffering.  See State v. Hurst, 99-2868 (La. App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 2000-3053 (La. 10/5/01), 798 So.2d 962.  A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.  State v. Hogan, 480 So.2d 288, 291 (La. 1985).  A district court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion.  State v. Lobato, 603 So.2d 739, 751 (La. 1992).
>
> The Louisiana Code of Criminal Procedure sets forth items that must be considered by the district court before imposing sentence.  See La. Code Crim. P. art. 894.1.  The district court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines.  State v. Herrin, 562 So.2d 1, 11 (La. App. 1st Cir. 1990), writ denied, 565 So.2d 942 (La. 1990).  In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the district court's stated reasons and factual basis for its sentencing decision.  State v. Watkins, 532 So.2d 1182, 1186 (La. App. 1st Cir. 1988).
>
> The defendant was sentenced to twenty years at hard labor without the benefit of probation or suspension of sentence, which is the minimum mandatory sentence pursuant to Louisiana Revised Statutes 15:529.1(A)(4)(a).  Even though a sentence is the mandatory minimum sentence, it may still be excessive if it makes no "measurable contribution to acceptable goals of punishment" or amounts to nothing more than the "purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime."  State v. Dorthey, 623 So.2d 1276, 1280 (La. 1993).  In order for a defendant to rebut the presumption that a mandatory minimum sentence is constitutional, he must "clearly and convincingly" show that:
>
>> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the

culpability of the offender, the gravity of the offense, and the circumstances of the case.

State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672, 676.  Departures downward from the minimum sentence should only occur in rare situations.  See Johnson, 709 So.2d at 677.

Prior to the imposition of sentence, the State argued that the defendant had "chosen the criminal life" and suggested that more than a minimum sentence would be warranted.  However, the district court disagreed with the State's position and imposed the twenty-year sentence without benefit of probation or suspension of sentence.  After the imposition of sentence, the defendant challenged his habitual offender adjudication, but did not present any arguments in favor of a sentence below the mandatory minimum.

Based on our review of the record, we find that the district court did not err or abuse its discretion in imposing the defendant's sentence in accordance with the mandatory minimum penalty provided for in Louisiana Revised Statutes 15:529.1(A)(4)(a).  The defendant failed to present any arguments that clearly and convincingly showed that he is exceptional and a victim of the legislature's failure to assign a sentence that was meaningfully tailored to his culpability, to the gravity of the offense, and to the circumstances of the case.  Thus, the district court had no reason to deviate downward from the mandatory minimum term of twenty years.  We also note that a remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown.  See State v. Harper, 2007-0299 (La. App. 1 Cir. 9/5/07), 970 So.2d 592, 602, writ denied, 2007-1921 (La. 2/15/08), 976 So.2d 173.  Accordingly, this assignment of error is without merit.[48]

### G.  Supervisor's Involvement

Lastly, petitioner states that "[t]he supervisor was personally involved."[49]  He does not explain this claim, and neither its meaning nor its constitutional foundation is apparent to the Court.  Accordingly, petitioner has failed to meet his burden to establish that this claim, whatever it may be, warrants habeas corpus relief.

### RECOMMENDATION

It is therefore **RECOMMENDED** that the federal applications for habeas corpus relief filed by Jason Jarrell Spikes be **DISMISSED WITH PREJUDICE**.

---

[48] State v. Spikes, No. 2017KA0655, 2017 WL 6524791, at *4-5 (La. App. 1st Cir. Dec. 21, 2017); State Rec., Vol. 3 of 5.

[49] Rec. Doc. 45, p. 16.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[50]

New Orleans, Louisiana, this twenty-eighth day of May, 2019.


**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[50] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.